IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS KALMAR and RAFFAELLA KALMAR | ) | CASE NO.: 1:24-cv-00193 |
| | ) | |
| | ) | JUDGE: DAN AARON POLSTER |
| Plaintiffs, | ) | |
| | ) | |
| -v- | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DISMISS THE AMENDED** |
| THE CLEVELAND INSTITUTE OF | ) | **COMPLAINT AND INCORPORATED** |
| MUSIC, VIVIAN SCOTT, SCOTT | ) | **MEMORANDUM IN SUPPORT** |
| HARRISON, DEAN SOUTHERN, and | ) | |
| PAUL HOGLE | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants The Cleveland Institute of Music ("CIM" or the "Institute"), Scott Harrison ("Harrison"), Dean Southern ("Southern"), and Paul Hogle ("Hogle") (collectively the "CIM Defendants") respectfully move this Court for an Order dismissing Plaintiffs' Amended Complaint, on the grounds that it fails to state any claims upon which relief may be granted as against the CIM Defendants. The reasons supporting this Motion are set forth in detail in the attached Memorandum in Support.

## TABLE OF CONTENTS

I. **INTRODUCTION** ................................................................................. 1

II. **RELEVANT FACTUAL BACKGROUND** ....................................... 2

III. **STANDARD OF REVIEW** ............................................................... 5

IV. **LAW AND ARGUMENT** .................................................................. 6

  A. **Count I Should Be Dismissed Because the Amended Complaint Fails To State Any Allegations Giving Rise To a Private Right of Action Under Title IX** ............................................................... 6

    1. *Title IX Affords a Private Right of Action Only for Intentional Sex Discrimination* ............................................. 6

    2. *Kalmar Does Not Allege the Protected Activity Required for a Claim of Retaliation* .................................................... 7

    3. *Kalmar's Title IX Claim Must Be Dismissed as Against Defendants Harrison and Southern* ............................................. 10

  B. **Kalmar's Claim for Retaliation Under Ohio Law (Count II) Fails Because He Has Not Satisfied the Administrative Prerequisites and He Has Not Alleged the Requisite Protected Activity** ..................................... 11

  C. **Kalmar Cannot State a Cognizable Claim for Negligence (Count III)** ......... 12

  D. **Count IV Fails to State a Claim Because the Amended Complaint Does Not Adequately Allege the "Actual or Constructive Knowledge" Required for Negligent Hiring, Training, Supervision or Retention** ............. 14

  E. **The Amended Complaint Alleges No Facts That Could Give Rise to a Viable Claim for Breach of Contract (Count V)** ................................. 17

  F. **Absent a Breach of Contract, Kalmar's Claim for Tortious Breach of Contract (Count VI) Likewise Fails** ................................. 18

  G. **Kalmar's Constructive Discharge Claim (Count VII) Fails Because No Such Independent Claim Exists and Because He Remains Employed by CIM** ................................................................ 19

  H. **Kalmar's False Light Invasion of Privacy (Count VIII) and Defamation (Count IX) Claims Cannot Stand Because He Has Not Adequately Alleged Any False Statements** ........................................ 20

  I. **Kalmar's Tortious Interference with Business Relationships Claim (Count X) Fails Because He Has Not Plausibly Alleged the Existence of Any Such Relationships, the CIM Defendants' Knowledge of Any Such Relationship, or that the CIM Defendants Intentionally Interfered with Any Such Relationship** ...................................... 23

      **J.**      **The Amended Complaint Fails to Allege the "Extreme and Outrageous" Conduct Required to State a Claim for Intentional Infliction of Emotional Distress (Count XI), Nor Can Kalmar Plausibly Allege the CIM Defendants' Vicarious Liability**............................ 25

      **K.**      **Plaintiff Raffaela Kalmar Cannot State a Claim for Loss of Consortium (Count XII) Because Carlos Kalmar Has Not Alleged Bodily Injury** ....................................................................................... 27

**V.**  **CONCLUSION** ............................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,*
   73 Ohio St.3d 1 (1995)................................................................................................23

*Anthony v. TRW, Inc.,*
   726 F. Supp. 175 (N.D. Ohio May 8, 1989) ........................................................25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................5, 16

*Baab v. AMR Services Corp.,*
   811 F.Supp. 1246 (N.D. Ohio 1993)......................................................................26

*Beatty v. Progressive Cas. Ins. Co.,*
   No. 1:12-cv-2646, 2013 U.S. Dist. LEXIS 3414 (N.D. Ohio Jan. 9, 2013) ..........25

*Blatnik v. Dennison,*
   148 Ohio App. 3d 494 (11th Dist. 2002) ...............................................................28

*Bonnell v. Lorenzo,*
   241 F.3d 800 (6th Cir. 2001) ..................................................................................6

*Bowen v. Kil-Kare, Inc.,*
   63 Ohio St.3d 84 (1992).........................................................................................27

*Bowman v. Holcomb,*
   83 Ohio App. 3d 216 (12th Dist. 1992) .................................................................28

*Browning v. Ohio State Highway Patrol,*
   2003-Ohio-1108 (10th Dist.) .................................................................................15

*Burch v. Ohio Famers Ins. Co.,*
   2023-Ohio-912 (5th Dist.) .....................................................................................11

*Cannon v. University of Chicago,*
   441 U.S. 677 (1979).................................................................................................6

*Chambers v. St. Mary's School,*
   82 Ohio St.3d 563 (1998).......................................................................................13

*Coch v. GEM Indus.,*
   2005-Ohio-3045 (6th Dist.) ...................................................................................11

*Cox v. Hausmann*,
　　No. 3:17-cv-02420, 2020 U.S. Dist. LEXIS 181458 (N.D. Ohio Sept. 30, 2020) .................19

*Cunningham v. Hildebrand*,
　　142 Ohio App. 3d 218 (11th Dist. 2001) .............................................................................28

*Davis v. Monroe Cnty Bd. of Educ.*,
　　526 U.S. 629 (1999)........................................................................................................1, 6

*Doe v. Belmont Univ.*,
　　367 F.Supp.3d 732 (M.D. Tenn. 2019)....................................................................7, 8, 9, 12

*Doe v. Univ. of Tenn.*,
　　186 F.Supp.3d 788 (M.D. Tenn. 2016)...............................................................................8

*Doe v. University of the South*,
　　687 F.Supp.2d 744 (E.D.Tenn. 2009) .................................................................................7

*Doyle v. Fairfield Machine Co., Inc.*,
　　120 Ohio App.3d 192 (11th Dist. 1997) .............................................................................19

*E.E.O.C. v. Spitzer Mgmt.*,
　　866 F.Supp.2d 851 (N.D. Ohio Mar. 30, 2012) ..................................................................20

*Edwards v. Woodforest Nat'l Bank*,
　　No. 1:11-cv-2205, 2012 U.S. Dist. LEXIS 72974 (N.D. Ohio May 24, 2012) .....................24

*Evans v. Akron Gen. Med. Ctr.*,
　　163 Ohio St.3d 284 (2020)...............................................................................................15

*Evans v. Akron Gen. Med. Ctr.*,
　　2018-Ohio-3031 (9th Dist.) .........................................................................................13, 15

*Evans v. Thrasher*,
　　2013 Ohio-4776 (1st Dist.) ...............................................................................................27

*Fitzgerald v. Barnstable School Committee*,
　　555 U.S. 246 (2009)..........................................................................................................10

*Fixel v. LSMJ1, LLC*,
　　No. 22-CV-1896, 2023 U.S. Dist. LEXIS 176624 (N.D. Ohio Oct. 2, 2023) ........................27

*Francis v. Ne. Ohio Neighborhood Health Servs., Inc.*,
　　2021-Ohio-3928 (8th Dist.) ..........................................................................................15, 16

*Franklin v. Gwinnett County Public Schools*,
　　503 U.S. 60 (1992)..............................................................................................................6

*Fred Siegel Co., L.P.A. v. Arter & Hadden*,
 85 Ohio St.3d 171 (1999)........................................................................................19

*Fuhr v. Hazel Park Sch. Dist.*,
 710 F.3d 668 (6th Cir. 2013) ................................................................................7, 8

*Garofolo v. Fairview Park*,
 2009-Ohio-6456 (8th Dist.) ......................................................................................21

*Gebser v. Lago Vista Independent School Dist.*,
 524 U.S. 274 (1998)....................................................................................................6

*Gentile v. Turkoly*,
 2017-Ohio-1018 (7th Dist.) ......................................................................................24

*Gordon v. Traverse City Area Pub. Schs.*,
 686 F. App'x 315 (6th Cir. 2017) ..............................................................................8

*Greenberg v. Life Ins. Co. of VA.*,
 177 F.3d 507 (6th Cir. 1999) .....................................................................................3

*Guy v. Bd. Of Educ. Rock Hill Local Sch. Dist.*,
 No. 1:18-cv-893, 2020 U.S. Dist. LEXIS 94778 (S.D. Ohio May 31, 2020)..........19

*Hardie v. Shady Hollow Country Club*,
 1996 Ohio App. LEXIS 2956 (5th Dist. 1996)........................................................26

*Hines v. Humana Insurance Co.*,
 No. 1:21-cv-0409, 2023 U.S. Dist. LEXIS 153992 (S.D. Ohio Aug. 30, 2023) ....11

*Hout v. City of Mansfield*,
 550 F.Supp.2d 701 (N.D. Ohio 2008)......................................................................15

*Jackson v. Birmingham Bd. of Educ.*,
 544 U.S. 167 (2005)....................................................................................................6

*Jones v. Wheelersburg Local School Dist.*,
 2013-Ohio-3685 (4th Dist.) ................................................................................26, 27

*Kesterson v. Kent State Univ.*,
 967 F.3d 519 (6th Cir. 2020) .....................................................................................1

*Krohn v. Ostafi*,
 2020-Ohio-1536 (6th Dist.) ......................................................................................24

*Kuvedina v. Cognizant Technology Solutions*,
 946 F.Supp.2d 749 (S.D. Ohio 2013) ......................................................................16

*Lang v. Beachwood Pointe Care Ctr.*,
2017-Ohio-1550 (8th Dist.) ................................................................................12

*Lucarell v. Nationwide Mut. Ins. Co.*,
152 Ohio St.3d 453 (2018)..................................................................................17

*Mallory v. Ohio Univ.*,
76 F. App'x 634 (6th Cir. 2003)............................................................................7

*Marcum v. Bd. Of Educ. Of Bloom-Carroll Local Sch. Dist.*,
727 F.Supp. 2d 657 (S.D. Ohio 2010) ..................................................................9

*McClane v. Genessee County Road Commission*,
No. No. 18-CV-13774, 2020 WL 1323332 (E.D. Mich. Mar. 20, 2020) ...............10

*Meminger v. Ohio State Univ.*,
2017-Ohio-9290 (10th Dist.) ..............................................................................26

*Miller v. Brungardt*,
916 F. Supp. 1096 (D. Kan. 1996) .......................................................................10

*Mussivand v. David*,
45 Ohio St.3d 314 (1989)....................................................................................13

*Olthaus v. Niesen*,
2023-Ohio-4710 (1st Dist.) ....................................................................21, 22, 23

*Pelland v. Wal-Mart Stores, Inc.*,
158 F.Supp.3d 1019 (N.D. Ohio 2017)................................................................14

*Pennsylvania State Police v. Suders*,
542 U.S. 129 (2004)............................................................................................20

*Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*,
66 Ohio St.2d 192 (1981)....................................................................................11

*Ray v. Wal-Mart Stores, Inc.*,
2013-Ohio-2684 (4th Dist.) ................................................................................14

*Ridley v. Fed. Express*,
2004-Ohio-2543 (8th Dist.) ................................................................................25

*Rodingo, L.L.C. v. Twp. Of Richmond*,
641 F.3d 673 (6th Cir. 2011) ................................................................................3

*Rogers v. Horwitz*,
No. 1:20-cv-02568, 2023 U.S. Dist. LEXIS 174885 (N.D. Ohio Sept. 29, 2023) .................28

*Schaumleffel v. Muskingum Univ.*,
   No. 2:17-cv-463, 2018 U.S. Dist. LEXIS 36350 (S.D. Ohio Mar. 6, 2018)............................6

*Sheldon v. Kettering Health Network*,
   2015-Ohio-3268 (2nd Dist.)......................................................................................13

*Sitton v. Massage Odyssey*,
   2020-Ohio-4282 (1st Dist.)........................................................................................15

*Sygula v. Regency Hospital of Cleveland East*,
   2016-Ohio-2843 (8th Dist.) .......................................................................................21

*Wauseon Plaza Ltd. Psp. v. Wauseon Hardware Co.*,
   2004-Ohio-1661 (6th Dist.) ..................................................................................23, 24

*Weiner v. Klais & Co.*,
   108 F.3d 86 (6th Cir. 1997) .........................................................................................3

*Welling v. Weinfeld*,
   113 Ohio St.3d 464 (2007).........................................................................................21

**Statutes**

Title IX, 20 U.S.C. § 1681(a)............................................................................................6

Title VII of the Civil Rights Act of 1964....................................................................6, 11

Ohio R.C. § 4112.02 ...................................................................................................11, 12

Ohio R.C. § 4112.052(B).................................................................................................11

**Other Authorities**

34 C.F.R. § 106.71 ...............................................................................................9, 12, 14

Fed. R. Civ. P. 12(b)(6)........................................................................................ *passim*

## MEMORANDUM IN SUPPORT

I.     **INTRODUCTION**

At its core, this case concerns an April 27, 2023 email (the "April 27th email") that then-CIM Title IX Coordinator and Director of Title IX Compliance, Defendant Vivian Scott ("Scott") published after reading a year-end course evaluation form from a student containing allegations about Plaintiff Carlos Kalmar ("Kalmar"), and the events that followed. The year-end course evaluation triggered not only the April 27th email, but an investigation of several months by which CIM, through designated, external investigators, evaluated sexual misconduct and discrimination allegations against Kalmar. (*See* Amended Complaint ("Am. Compl."), ECF Doc. 4, ¶¶ 62-64.)

An educational institution's failure to prevent or remedy sexual harassment of a student, including sexual assault, may violate Title IX. See *Davis v. Monroe Cnty Bd. of Educ.*, 526 U.S. 629, 648 (1999). In order to establish a violation of Title IX, harassment complainant must show, among other factors, that the institution acted with "deliberate indifference" in its failure to remedy the alleged violation, i.e. that the institution was "clearly unreasonable in light of what it knew." See *Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020).

Kalmar does not and cannot contend that CIM should have ignored the allegations raised by the subject year-end course evaluation, thereby potentially violating its Title IX obligations. Yet, Kalmar seeks to turn the "deliberate indifference" standard on its head, instead maintaining that he is the victim of deliberate indifference under the statute. Title IX affords no private right of action under which Kalmar can prevail on this theory, which would essentially reward any individual against whom allegations of discrimination were made, and whose conduct subsequently was found not to have violated the statute, with his own claim for relief. Beyond his Title IX claim, Kalmar charges CIM, Southern, Harrison and Hogle (collectively the "CIM Defendants") with a laundry list of state law claims, some arising from Defendant Scott's

1

disclosure of his identity in the April 27, 2023 email, and some arising from CIM's administrative decisions following the closure of the Title IX Investigation. As demonstrated below, the Amended Complaint fails to state claims upon which relief can be granted, and should be dismissed as against the CIM Defendants pursuant to Rule 12(b)(6).

## II.     RELEVANT FACTUAL BACKGROUND

Kalmar and CIM entered into an Agreement  (the "Agreement") on April 13, 2021, setting forth the terms and conditions of Kalmar's employment as Director of Orchestral and Conducting Programs. See Agreement, Doc. 4-1, PageID 143-153. The Agreement provided that it would remain in effect for six years, commencing July 1, 2021 and concluding June 30, 2027. (Id., ¶ 2.) Among Kalmar's obligations under the Agreement were to:

- "[S]et and unapologetically maintain expectations for rehearsals, performances, and audiences that are clear, consistent, and the highest artistic levels, and ensure that all expectations are achieved within a culture of serious, professional, and collegial comportment." (Id., ¶ 4(a)(iv)).

- "[B]e a clear, consistent leader from the podium with a temperament suitable for an educational environment that remains entirely focused on the expectations of the Program." (Id., ¶ 4(b)(iv)).

- "[M]anage respectful rehearsals and other activities that will prepare the students for professional environment while allowing time and space to grow and improve over the course of a concert cycle, semester, year and Program." (Id., ¶ 4(b)(v)).

- "[M]odel and foster the professional and personal characteristics of a successful conductor and insist that students apply these principles in working with internal and external ensembles." (Id., ¶ 4(c)(iv)).

In exchange for Kalmar's performance of his obligations, CIM assumed the obligations set forth in Paragraph 5 of the Agreement, including Kalmar's compensation; benefits; moving expenses; reimbursement of approved expenses in connection with the performance of Kalmar's duties; a studio office and appropriate administrative support for Kalmar to conduct his duties

under the Agreement; and CIM's best efforts to provide Kalmar with necessary financial and human resources support for programs, to be mutually agreed upon by Kalmar and CIM. (Id., ¶ 5.)

As of April 2023, Defendant Scott was acting as CIM's Title IX Coordinator and Director of Title IX Compliance. (Am. Compl., ¶ 24.) Scott reviewed an anonymous year-end course evaluation form which read, in pertinent part:

<span style="color:red">REDACTED</span>

See Exhibit 1-A (Anonymous Course Evaluations, p. 4).[1]

Defendant Scott then sent the April 27, 2023 email referenced in the Amended Complaint. (Am. Compl., ¶ 24.)[2] Approximately one week later, following student communications echoing

---

[1] In his Amended Complaint., Kalmar references multiple documents, including but not limited to the year-end course evaluation form that that Defendant Scott referenced in her April 27th email; the Title IX Investigation itself, including Kalmar's representations of what the Title IX Investigation did and did not conclude; Defendant Harrison's May 5, 2023 email; and Defendant Southern's email to students following the conclusion of the Title IX Investigation. As these documents are central to Kalmar's claims and are specifically referenced in the Amended Complaint (¶¶ 24, 46-54; 72-76; 78; 82) they are necessarily incorporated and the CIM Defendants may attach the documents themselves on a motion to dismiss. *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997), overruled on others grounds; *Greenberg v. Life Ins. Co. of VA.,* 177 F.3d 507, 514 (6th Cir. 1999); *Rodingo, L.L.C. v. Twp. Of Richmond,* 641 F.3d 673, 682 (6th Cir. 2011).

[2] While Kalmar suggests that the anonymous year-end course evaluation was the sole report of inappropriate behavior on his part that resulted in the April 27th email (*see* Am. Compl., ¶ 24), the CIM Defendants deny any such allegation.

Scott's concerns, CIM Executive Vice President and Provost Scott Harrison sent an email with the

subject line "Update regarding Title IX investigation". (Id., ¶ 46.)  That email read:

> Dear CIM Community,
>
> As you likely are aware, CIM has initiated an investigation into <u>allegations of potential misconduct</u> by Carlos Kalmar. CIM has retained Carole Rendon and Sarah Spring of BakerHostetler <u>to conduct an independent, objective, fair, and thorough investigation of the matter</u>. For those who would like to confidentially speak to the investigators, their contact information is as follows:
>
> Carole Rendon [CONTACT INFORMATION OMITTED]
>
> Sarah Spring [CONTACT INFORMATION OMITTED]
>
> Carole Rendon is the former U.S. Attorney for the Northern District of Ohio. In the private practice of law, she has had extensive experience conducting Title IX and internal investigations for a wide variety of higher education and other institutions. You can read more about her at www.bakerlaw.com/CaroleSRendon.

*See* Harrison email, attached as Exhibit 2 (emphasis added).

CIM, through the designated investigators at BakerHostetler, conducted a Title IX

investigation (the "Title IX Investigation") over several months. (Am. Compl., ¶ 63.) The findings

were summarized in a confidential, August 3, 2023 memorandum from Carole Rendon and Sarah

Spring to Dean Southern (the "Investigative Findings".). See Exhibit 1.[3]

Unrelated to the Kalmar investigation, CIM terminated its contractual relationship with

Defendant Scott in July 2023. (Am. Compl., ¶ 58.)

Following the Title IX Investigation, Defendant Southern, on behalf of CIM,

communicated via email that:

> As CIM's Acting Title IX Officer, I thoroughly reviewed the investigative report which included written reports, voluntary written statements, videos, interviews

---

[3] In addition to the memorandum compiling the Investigative Findings, the CIM Defendants have included all documentary exhibits to the memorandum. The CIM Defendants have separately provided the remaining exhibits to the Court at the Court's request.

with more than thirty CIM students, faculty, and staff, and additional evidence provided by both parties. Based on the evidence found in the investigative report, CIM has concluded that the specific allegations against Carlos Kalmar did not violate the Sexual Assault, Sexual Harassment, and Sex Non-Discrimination Policy Under Title IX. The investigation found that the alleged conduct could not constitute sex discrimination or sexual harassment as prohibited by Title IX because the conduct did not have 'the purpose or effect of substantially or unreasonably interfering with a person's participation in educational programs or activities…' Moreover, the conduct was not on the basis of sex, nor was it so severe or pervasive as to create an objectively offensive environment such that it denies anyone equal access to educational opportunities at CIM based on gender. Therefore, the Institute was obligated to dismiss the formal complaint of Sexual Harassment in this matter.

(Id., ¶ 82; Southern email, attached as Exhibit 3.)

Seven weeks after the Investigative Findings were released to Defendant Southern, on September 28, 2023, Kalmar was temporarily relieved of his duties under the Agreement and placed on a leave of absence. (Am. Compl., ¶ 21.) Notably, the Amended Complaint does not allege that CIM has failed to pay Kalmar his compensation and benefits under the Agreement since that date.

## III.  <u>STANDARD OF REVIEW</u>

Dismissal pursuant to Rule 12(b)(6) is required where it appears beyond doubt that a plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. To survive a motion to dismiss under Rule 12(b)(6), an Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim that has such facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The United States Supreme Court cautions that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555 (citing *Twombly*, 550 U.S. at 555).

5

## IV.  LAW AND ARGUMENT

### A.  Count I Should Be Dismissed Because the Amended Complaint Fails To State Any Allegations Giving Rise To a Private Right of Action Under Title IX.

#### 1.  *Title IX Affords a Private Right of Action Only for Intentional Sex Discrimination.*

Title IX was enacted to supplement the ban on discrimination in the Civil Rights Act of 1964, and it is designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. *Bonnell v. Lorenzo*, 241 F.3d 800, 810 n.6 (6th Cir. 2001); *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2018 U.S. Dist. LEXIS 36350, at *34 (S.D. Ohio Mar. 6, 2018). It states that: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance...."  Title IX, 20 U.S.C. § 1681(a).

The Supreme Court has held that Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination, *Cannon v. University of Chicago*, 441 U.S. 677, 690–693 (1979), and that that right includes actions for monetary damages by private persons, *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992). That private right of action encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to sexual harassment of a student by a teacher, *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290–291 (1998), or by another student, *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 642 (1999).

In *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 167 (2005), the Supreme Court held that retaliation is among the forms of "intentional sex discrimination" that is actionable under Title IX, *i.e.* that Title IX's private right of action encompasses claims of retaliation against an individual because he has complained about sex discrimination. *Id.* at 171. The Court clarified that retaliation is "discrimination" because the complainant is subjected to differential treatment and that it is

discrimination "on the basis of sex" because it is an intentional response to the nature of the Amended Complaint: an allegation of sex discrimination.

Finally, Kalmar's attempt to ground his claim in  "deliberate indifference" (Amended Complaint, ¶ 55) is entirely misplaced. As the court observed in *Mallory v. Ohio Univ*., 76 F. App'x 634, 638 (6th Cir. 2003), "[t]he 'deliberate indifference' standard is applied where a plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.'" (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277 (1998). *See also  Doe v. University of the South*, 687 F.Supp.2d 744, 757–58 (E.D.Tenn. 2009) ("The 'deliberate indifference' must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."). "[A] Plaintiff may demonstrate a defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Id.*, quoting *Patterson v. Hudson Area Schs*., 551 F.3d 438, 446 (6th Cir.2009). Kalmar is not student, and he did not lodge a complaint of sex discrimination or harassment under Title IX. The deliberate indifference framework is inapposite to his claim.

> 2.  *Kalmar Does Not Allege the Protected Activity Required for a Claim of Retaliation.*

Kalmar's Title IX claim fails, in short, because he does not allege intentional discrimination on the basis of sex -- whether under any theory recognized under Title IX or otherwise. While Kalmar seemingly tries to posture his claim as one of retaliation, his allegations, on their face, do not amount to such a claim.

Title IX retaliation claims are generally analyzed using the same standards as Title VII retaliation claims. *Doe v. Belmont Univ*., 367 F.Supp.3d 732, 755-56 (M.D. Tenn. 2019); *Fuhr v.*

*Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013), abrogated on other grounds by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). To establish a prima facie case of Title IX retaliation, a plaintiff must show that they engaged in a protected activity under Title IX; (2) this activity was known to the defendant; 3) the defendant, thereafter, took an adverse school-related action against them; and (4) a causal connection exists between the protected activity and the adverse school-related action. *Fuhr*, 710 F.3d at 674; *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017).

The Amended Complaint fails to satisfy the most essential element of a retaliation claim, namely, that Kalmar engaged in a protected activity under Title IX. Kalmar alleges that he engaged in "protected activity" by "participat[ing]" in and "cooperat[ing]" with CIM's investigation of the Am. Compl. regarding his behavior, and "oppos[ing]" and "defend[ing]" himself against allegations of sex discrimination. (Am. Compl., ¶ 125.) However, courts in this Circuit have firmly rejected such allegations as amounting to protected activity under Title IX.

The holding in *Doe v. Belmont University* is precisely on point, and requires dismissal of Kalmar's Title IX claim on this ground alone. There, the plaintiff's retaliation claim was "solely premised upon the theory that he was punished, by means of collateral violations, for "defending himself" against Student S.'s sexual misconduct charges during Belmont's Title IX investigation." *Id*. at 756. The court rejected that theory of recovery, observing that "in stark contrast to merely defending oneself against charges as a participant in a sexual misconduct investigation, the 'protected activity' that forms the basis of a Title IX retaliation claim is actively complaining of or opposing alleged discrimination on the basis of sex under Title IX." *Id*. at 756-57 (citing *Jackson*, 544 U.S. at 183; *Doe v. Univ. of Tenn.*, 186 F.Supp.3d 788, 809 (M.D. Tenn. 2016) ("The Supreme Court has recognized a retaliation claim under Title IX for individuals who are retaliated

against by Title IX funding recipients for complaining of Title IX violations."); *Marcum ex rel. C.V. v. Bd. Of Educ. Of Bloom-Carroll Local Sch. Dist.,* 727 F.Supp. 2d 657, 666-67 (S.D. Ohio 2010) ("Title IX prohibits retaliation against persons who complain of sex discrimination.")).

The *Doe v. Belmont* court observed:

> Doe has offered no authority for the novel proposition that defending himself against allegations of sexual misconduct, in and of itself, is the legal equivalent of opposing or complaining of unlawful practices under Title IX. If this were the law, every respondent in a Title IX investigation would have a baked-in retaliation claim simply because they resisted an allegation of sexual misconduct. Indeed, merely defending an allegation of misconduct is as different from actively opposing or complaining of unlawful discrimination as day is to night; the former involves affirming that one has not committed wrongdoing, while the latter rests on the notion, real or perceived, that one has been on the receiving end of or has opposed wrongdoing in the form of illegal discrimination.

*Id*.

Such is the case here. The Amended Complaint in no way, shape, or form alleges that Kalmar complained of sex discrimination. Rather, Kalmar's claim is strictly that that the CIM Defendants took adverse action against him because he cooperated in the Title IX Investigation and defended himself from allegations of misconduct. Kalmar's defense of those allegations does not afford him a "baked-in retaliation claim".

Nor does 34 C.F.R. § 106.71 afford Kalmar a private right of action in connection with the disclosure of his identity. Kalmar cites that regulation, entitled "Retaliation Prohibited", seemingly suggesting that Defendant Scott's disclosure of his identify as a reported "perpetrator of sex discrimination" somehow renders him a victim of retaliation. *See* Am. Compl., ¶¶ 16; 123. Like Kalmar's argument that his willing participation in the Title IX Investigation and his defense of the allegations constituted protected activity and his suggestion that the disclosure affords him an actionable claim falls far afield of any recognized cause of action under the statute.

9

Kalmar's Title IX claim also fails on the third and fourth prongs of the prima facie case. As a matter of law, Kalmar's placement on paid administrative leave does not rise to the level of an adverse action for purposes of a retaliation claim. *See McClane v. Genessee County Road Commission,* No. No. 18-CV-13774, 2020 WL 1323332, at *9 (E.D. Mich. Mar. 20, 2020) (citing *Spellman v. Ohio Dep't of Transp*., 244 F. Supp. 3d 686, 702 (S.D. Ohio 2017) (stating that "Sixth Circuit case law suggests that temporary removal or forced administrative leave with pay are not, in and of themselves, materially adverse employment actions.")). Even if Kalmar's paid leave could be deemed an adverse action, his allegation of a causal connection between any "protected activity" (of which there was none) and CIM's subsequent actions with respect to his employment, including its decision to place him on leave, is purely conclusory (see Am. Compl., ¶ 128); he offers no facts to support that alleged nexus.

3.    *Kalmar's Title IX Claim Must Be Dismissed as Against Defendants Harrison and Southern.[4]*

Finally, even if the Amended Complaint contained sufficient allegations to state a claim under Title IX against CIM, which it does not, Count I must be dismissed as to Defendants Harrison and Southern because "Title IX… [does] not authorize suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009). To the extent Kalmar asserts a Title IX claim against Harrison and Southern in their "official capacity" as agents of the University, such claims are duplicative of Kalmar's claims against the Institute and therefore should be dismissed. See, e.g., *Miller v. Brungardt*, 916 F. Supp. 1096, 1098 (D. Kan. 1996) (dismissing individual defendants in their official capacity where claims are brought against the employer directly and, thus, are duplicative).

---

[4] Note that Kalmar does not assert a Title IX claim against Defendant Hogle.

**B.** **Kalmar's Claim for Retaliation Under Ohio Law (Count II) Fails Because He Has Not Satisfied the Administrative Prerequisites and He Has Not Alleged the Requisite Protected Activity.**

As set forth in greater detail below, Kalmar's Second Claim for Relief, which alleges retaliation under Ohio R.C. § 4112.02(I), fails largely for the same reason as his claim for retaliation under Title IX, i.e. because he has failed to allege the requisite protected activity. But the Court need not even reach that question, because Kalmar has failed to satisfy the underlying administrative requirements to even assert that claim, which require that he first file a charge with and obtain a notice of right to sue from the Ohio Civil Rights Commission. *See* Ohio R.C. § 4112.052(B); *Burch v. Ohio Famers Ins. Co.*, 2023-Ohio-912, ¶ 31 (5th Dist.). Kalmar does not allege that he met that requirement, and his claim is subject to dismissal on that ground alone.

Second, even if Kalmar could bypass the administrative prerequisite (he cannot), he has failed to sufficiently allege the elements of a prima facie case of retaliation under Ohio law. In interpreting R.C. Chapter 4112.02, Ohio courts rely on federal case law interpreting Title VII of the Civil Rights Act of 1964. See *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). Thus, as with respect to Kalmar's Title IX claim, he must show that he engaged in a protected activity. *See supra*, pp. 7-8. Specifically, Kalmar must allege facts showing that that he took an "'overt stand against suspected illegal discriminatory action.'" *Coch v. GEM Indus.*, 2005-Ohio-3045, ¶ 32 (6th Dist.); (quoting *Comiskey v. Automotive Industry Action Group,* 40 F.Supp.2d 877, 898 (E.D. Mich. Feb. 11, 1999)). See also *Hines v. Humana Insurance Co.*, No. 1:21-cv-0409, 2023 U.S. Dist. LEXIS 153992, at *26 (S.D. Ohio Aug. 30, 2023) (rejecting claim that internal complaint regarding internal hiring practices, among other internal process, was protected activity for purposes of a retaliation claim, insofar as the plaintiff "nowhere state[d] that [he] believed he was being discriminated against

11

based on sex" and observing that "Ohio law is well settled that an employee alleging discriminatory retaliation must relate the protected conduct to a protected class… .")

Neither Kalmar's purported participation and cooperation in the Title IX Investigation, nor his denial of any allegations of discrimination meet this standard. As the Court observed in *Doe v. Belmont,* Kalmar's defense of an allegation of misconduct does not afford him a "baked-in retaliation claim" – lest any employee who denies allegations of discrimination upon an employer's investigation have an automatic claim of retaliation. The Amended Complaint lacks any allegations from which this Court could infer that Kalmar engaged in "protected conduct" as defined under Title VII and R.C. § 4112.02.

Finally, as with respect to Kalmar's claim for retaliation under Title IX, he has not proffered allegations sufficient to show that CIM's decision to place him on paid administrative leave was an "adverse action", or the requisite nexus between any alleged protected conduct and the adverse action he alleges. See *supra*, p. 10. Count II must be dismissed on this ground as well.

**C.  Kalmar Cannot State a Cognizable Claim for Negligence (Count III) .**

Kalmar's Fourth Claim for Relief alleges negligence against CIM, Scott, Harrison, and Southern based on their alleged violation of (1) a duty to keep Kalmar's identity confidential and ensure a fair and unbiased investigation under 34 C.F.R. § 106.71; (2) a duty to keep Kalmar's identity confidential under "professional industry standards for educational institutions"; and (3) a duty to keep Kalmar's identity confidential under CIM's own policies and procedures.

As to the Kalmar's first theory, while Kalmar attempts to charge CIM, Harrison, and Southern with negligence based on the disclosure of his identity in Scott's April 27th email, and in Harrison's and Southern's subsequent communications to the CIM community, he fails to allege facts sufficient to do so. Under Ohio law, it is well settled that violations of governmental regulations may not be used to establish negligence *per se*. *Lang v. Beachwood Pointe Care Ctr*.,

2017-Ohio-1550, ¶ 74 (8th Dist.) (citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563 (1998)). Thus, Kalmar must establish the elements of negligence, namely that 1) the Defendants owed him a duty, (2) the Defendants breached that duty, and (3) such breach was the proximate cause of his injuries. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565 (1998) (citations omitted). The existence of a duty is ordinarily a question of law. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

Kalmar proffers no allegations suggesting that Congress intended to afford the respondent in a Title IX investigation a common law cause of action arising from the disclosure of the respondent's identity. As such, this Court should reject Kalmar's suggestion that an underlying duty exists. See, e.g., *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, ¶ 1 (2nd Dist.) (finding that HIPPA regulations did not evidence duty of care for purposes of negligence claim arising from alleged failure to protect privacy of electronic medical information resulting in improper access and disclosures);

Regardless, Kalmar could not meet the standard of demonstrating a reasonably foreseeable risk, which is required to find that a common law duty exists. *See Evans v. Akron Gen. Med. Ctr.*, 2018-Ohio-3031, ¶ 66 (9th Dist.) (citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 76 (1984)). Read in the context of Defendant Scott's April 27th email, the Court could not reasonably conclude that the disclosure of Kalmar's name presented a foreseeable risk of "severe emotional distress, loss of earnings, and loss of earning capacity", as he alleges (Am. Compl., ¶ 141). As discussed further in connection with Kalmar's claims for false light invasion of privacy and defamation (*see* Section H), none of the communications at issue contained a single false statement; all made clear that the allegations against him were subject to investigation; and Defendant Southern's final statement (following the conclusion of the investigation) confirmed

that there was no finding that Kalmar violated Title IX. The absence of a reasonably foreseeable risk under these circumstances requires a finding that 34 C.F.R. § 106.71 does not impose the common law duty that Kalmar seeks to devise.

Kalmar's second theory of negligence, which relies on "professional standards for education institutions", likewise fails to state a claim. Nowhere in the Amended Complaint does Kalmar identify the standards upon which his negligence claim is based. Having failed even to articulate the source of a duty that CIM, Harrison, and Southern purportedly owed him in connection with such standards, Kalmar's claim should be dismissed.

Kalmar's claim based on CIM's policies and procedures fares no better. CIM's "Title IX training materials" (from which Kalmar quotes in ¶ 27) restate the language of 34 C.F.R § 106.71 and are therefore subsumed by Kalmar's negligence claim, if any, arising from the regulation itself. To the extent they exceed the scope of the regulation, CIM's "training materials", are a statement of internal operating procedures insufficient to form the basis of a negligence claim. See, e.g., *Pelland v. Wal-Mart Stores, Inc.*, 158 F.Supp.3d 1019, 1026 (N.D. Ohio 2017) (violation of a company policy does not, as a matter of Ohio law, establish negligence) (citing *Martin v. Giant Eagle, Inc.*, 2014-Ohio-2657, ¶ 31 (10th Dist.) ("A violation of an internal policy does not establish the standard of care."); *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, ¶ 37 (4th Dist.) ("a reasonable inference of negligence does not arise simply because an employee failed to comply with a policy directive"). To the extent Kalmar alleges negligence based on CIM's internal procedures, his claim fails on that basis as well.

### D. Count IV Fails to State a Claim Because the Amended Complaint Does Not Adequately Allege the "Actual or Constructive Knowledge" Required for Negligent Hiring, Training, Supervision or Retention.

In Kalmar's Fourth Claim for Relief, he seeks to hold the CIM Defendants liable for Defendant Scott's April 27, 2023 email through the tort of negligent hiring, training, supervision,

14

and retention. That claim fails at the outset because the Amended Complaint lacks any genuine allegations that the CIM Defendants had the requisite actual or constructive knowledge of Defendant Scott's alleged incompetence.

To make out a claim for negligent hiring and retention, a plaintiff must show (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employer's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Akron Gen. Med. Ctr.*, 2018-Ohio-3031, ¶ 26 (9th Dist.)[5] (citations omitted); *see also Francis v. Ne. Ohio Neighborhood Health Servs., Inc.*, 2021-Ohio-3928, ¶ 23 (8th Dist.). The elements of a negligent supervision claim are the same as those for negligent hiring or retention. *Francis,* at ¶ 23; *Browning v. Ohio State Highway Patrol*, 2003-Ohio-1108, ¶ 67 (10th Dist.). The viability of a negligent hiring, training or supervision claim turns on the foreseeability of the employee's conduct, i.e. "the plaintiff must show that the employer knew or should have known of the employee's 'propensity to engage in similar tortious or criminal conduct.'" *Sitton v. Massage Odyssey*, 2020-Ohio-4282, ¶ 12 (1st Dist.) (citing *Evans v. Akron Gen. Med. Ctr.*, at ¶ 31). See also *Hout v. City of Mansfield*, 550 F.Supp.2d 701, 745 (N.D. Ohio 2008) ("In claims for negligent hiring, retention, and supervision, foreseeability is the test of employer liability.") (internal quotations omitted).

Presumably, the act of "incompetence" on which Kalmar relies is Defendant Scott's disclosure of Kalmar's identity in the April 27th email, as the Amended Complaint does not

---

[5] On appeal to the Ohio Supreme Court, the court declined to adopt this test for the purpose of answering the certified questions on appeal. *Evans v. Akron Gen. Med. Ctr.*, 163 Ohio St.3d 284, 286 (2020). However, the Court affirmed the Ninth District's decision by answering the questions based on the appellate court's application and analysis of the test. *Id.* at 286, 289.

reference any other conduct on Defendant Scott's part.[6] However, Kalmar does not allege that Harrison, Southern or Hogle (or anyone else at CIM for that matter) knew or had any indication that Defendant Scott intended to send the April 27, 2023 email, or that she had published any similar communications in the past. *See* Am. Compl., ¶¶ 24 – 39. Despite the absence of any such allegations, Kalmar summarily recites that the CIM Defendants breached a duty by "[h]iring Defendant Scott when [they] knew or should have known that Defendant Scott was incompetent to serve As CIM's Title IX Coordinator…" (Am. Compl., ¶ 144(a)).

Absent any factual underpinnings, Kalmar's conclusory statement fails to allege "actual or constructive knowledge" with the requisite specificity and requires dismissal of his claim. *See Francis*, 2021-Ohio-3928, at ¶ 24 (dismissing claim of negligent training, retention and supervision where plaintiff failed to allege employer's actual or constructive knowledge on ground that, "[a]lthough [Ohio] Civ. R. 8(A)(1) only requires notice pleading, the complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions"). *Kuvedina v. Cognizant Technology Solutions*, 946 F.Supp.2d 749, 760 (S.D. Ohio 2013) (dismissing claim of negligent hiring and retention on 12(b)(6) motion where plaintiff recited all elements of the claim but failed to allege any specific facts supporting claim that employer had actual or constructive knowledge that employee would commit fraudulent act).

Contrary to the threadbare recitals that Kalmar has proffered here, Rule 12(b)(6) requires that he allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Here, Kalmar has failed to allege any factual content supporting his allegation that the CIM Defendants' had actual or

---

[6] The CIM Defendants deny that Defendant Scott's April 27, 2023 satisfies the requisite element of "incompetence", but do not address that element, strictly for purposes of this motion.

constructive knowledge of Defendant Scott's alleged incompetence. Absent any plausible set of facts, the Court should dismiss Count IV of the Amended Complaint for failure to state a claim.

### E.  The Amended Complaint Alleges No Facts That Could Give Rise to a Viable Claim for Breach of Contract (Count V).

Kalmar alleges that CIM breached his contract by (1) "disclosing to the public…that [he] was a perpetrator of sexual misconduct[7] and a respondent in a purported Title IX investigation" and (2) "refus[ing]to provide him with administrative support to perform his duties, preventing him from performing as CIM's Principal Conductor, relieving him of his duties and rights under the Agreement, placing him on an involuntary leave of absence, and prohibiting him from performing his job duties. (Am. Compl., ¶¶ 152-153.) To establish a breach of contract, Kalmar must establish the existence of a contract, CIM's failure (without legal excuse) to perform, and damages or loss resulting from the breach. See *Lucarell v. Nationwide Mut. Ins. Co*., 152 Ohio St.3d 453, 463 (2018).

The facts as alleged in the Amended Complaint do not, on their face, give rise to a breach of the Agreement between Kalmar and CIM. The Agreement lays out CIM's exclusive obligations in Paragraph 5, requiring that the Institute pay Kalmar's compensation; benefits; moving expenses; reimbursement of approved expenses in connection with the performance of Kalmar's duties; provide him a studio office and appropriate administrative support for Kalmar to conduct his duties under the Agreement; and put forth its best efforts to provide Kalmar with necessary financial and human resources support for programs, to be mutually agreed upon by Kalmar and CIM. See Agreement, Doc. 4-1, PageID 149-150 (Section 5, "CIM Obligations").

The vast majority of "violations" that Kalmar alleges do not fall within the terms of the Agreement – rather, they are reiterations of Kalmar's core allegation, namely, that he was wronged

---

[7] CIM denies it ever made this alleged disclosure.

by Defendant Scott's disclosure of his identity in the April 27th email. However, the Agreement says nothing about Title IX investigations or the disclosure of Kalmar's identity in the event of such an investigation.  Furthermore, the contract contains no terms regarding protection of Kalmar's reputation.

With respect to CIM's obligations under Paragraph 5 of the Agreement, Kalmar does not allege that CIM has failed to pay him any compensation or benefits due. Rather, the only alleged violation even captured by the Agreement is CIM's purported "refus[al] to provide [him] with … administrative support." (Am. Compl., ¶ 153.) But the Agreement is clear that CIM need only provide Kalmar with <u>appropriate</u> administrative support to conduct his duties. Having been relieved of his duties for purposes of his leave, Kalmar cannot genuinely contend that the administrative support he currently receives is inappropriate. Kalmar has not adequately alleged CIM's failure to perform.

Further, Kalmar does not allege any damages resulting from CIM's withdrawal of administrative support to conduct his duties. While he claims compensatory damages of more than $5 million for the Institute's alleged breach of the Agreement, Kalmar fails to allege any nexus between the lack of administrative support and those damages. As Kalmar has not adequately alleged damages for the specific breach he asserts, his breach of contract claim fails on that ground as well.

F.    **Absent a Breach of Contract, Kalmar's Claim for Tortious Breach of Contract (Count VI) Likewise Fails.**

Because Kalmar cannot allege a breach of the Agreement, his claim for tortious breach of contract, which he asserts against the CIM Defendants, also must be dismissed. A claim for tortious breach of contract requires (1) the existence of a contract, (2) the wrongdoer's knowledge of the

contract, (3) the wrongdoer's intentional procurement of the contract's breach[8], (4) lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St.3d 171, 178–79 (1999). As Kalmar fails to state a claim for breach of the Agreement (see supra, Section E), his claim for tortious breach of contract likewise fails on the third element under Rule 12(b)(6).

### G.  Kalmar's Constructive Discharge Claim (Count VII) Fails Because No Such Independent Claim Exists and Because He Remains Employed by CIM.

In Kalmar's Seventh Claim for Relief, he attempts to bring an independent claim for constructive discharge. However, "[n]either Ohio nor federal law recognize constructive discharge as an independent claim." *Cox v. Hausmann,* No. 3:17-cv-02420, 2020 U.S. Dist. LEXIS 181458, at *14, n.6 (N.D. Ohio Sept. 30, 2020) (citation omitted). This has long been the rule in the Sixth Circuit because "[c]onstructive discharge from employment is not itself a cause of action. First there must exist an underlying cause of action for employment discrimination." *Id.* (citation omitted). As "Plaintiff's Complaint does not contain any claim for unlawful discrimination[,]" his standalone constructive discharge claim must be dismissed. *Guy v. Bd. Of Educ. Rock Hill Local Sch. Dist.,* No. 1:18-cv-893, 2020 U.S. Dist. LEXIS 94778, at *23 (S.D. Ohio May 31, 2020) (granting the defendant's motion to dismiss independent claim for constructive discharge where the plaintiff did not plead claim for unlawful discrimination).

Even if Kalmar were to suggest he has an underlying claim for unlawful employment discrimination (he does not), he has failed to satisfy the underlying administrative requirements to

---

[8] Even if Count VI survived Rule 12(b)(6), Kalmar would have to show that the CIM Defendants acted with the requisite malice in procuring any breach. Because Defendant Scott's allegedly defamatory statements are covered by the qualified privilege (see Section I), the protection afforded those statements also applies to any derivative claims. See *Doyle v. Fairfield Machine Co., Inc.*, 120 Ohio App.3d 192, 218, (11th Dist. 1997) ("[t]he applicability of qualified privilege in tortious interference cases has been recognized by Ohio courts").

assert such a claim, namely that he first file a charge with and obtain a notice of right to sue from the Ohio Civil Rights Commission or the Equal Employment Opportunity Commission. *See supra,* p. 9. Kalmar does not and cannot allege that he has done so.

Kalmar's "constructive discharge" claim also fails on its face by virtue of the fact that he remains employed by CIM. It is well established that, to prevail on a claim for constructive discharge, a plaintiff must show that his "working environment became so intolerable that [his] resignation qualified as a fitting response." *See Pennsylvania State Police v. Suders,* 542 U.S. 129, 134 (2004). Of course, Kalmar cannot meet this this requirement because he <u>did not resign</u>; rather, he remains employed by, and continues to receive compensation from, CIM to this date. As Kalmar "does not contend that his work place became so intolerable that he was required to resign," his constructive discharge claim must be dismissed accordingly. *E.E.O.C. v. Spitzer Mgmt.,* 866 F.Supp.2d 851, 858 (N.D. Ohio Mar. 30, 2012).

## H.  Kalmar's False Light Invasion of Privacy (Count VIII) and Defamation (Count IX) Claims Cannot Stand Because He Has Not Adequately Alleged Any False Statements.

Counts VIII and IX of the Amended Complaint allege claims for false light invasion of privacy and defamation, respectively, against the CIM Defendants (as well as Defendant Scott), on the ground that the CIM Defendants "ratified and condoned" the statements in Defendant Scott's April 27, 2023 email through their subsequent statements and by failing to terminate her. (Am. Compl., ¶¶ 173-174; 186-187.) While Kalmar challenges what he apparently considers to be the inflammatory nature of the April 27th email, and the inferences he believes were drawn from that email, he fails to point out any specific false content. His claims fail on that critical element.

The Ohio Supreme Court has recognized the tort of false-light invasion of privacy as follows:

> In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling v. Weinfeld,* 113 Ohio St.3d 464, 473 (2007). It is axiomatic that "for a statement to be actionable in false light …'the statement made must be untrue.'" *Olthaus v. Niesen,* 2023-Ohio-4710, ¶ 24 (1st Dist.) (quoting *Welling,* 113 Ohio St.3d at 471) (emphasis added). Ohio's Supreme Court has emphasized that such claims are "difficult to prove." *Id.*

Similarly, "[t]o prevail on a defamation claim, a plaintiff must prove five elements: 1) <u>a false statement;</u> 2) about the plaintiff; 3) published to a third party; 4) with the required degree of fault by the defendant publisher; and 5) defamatory *per se* or defamatory *per quod*, causing special harm to the plaintiff." *Garofolo v. Fairview Park*, 2009-Ohio-6456, ¶ 17 (8th Dist.) (emphasis added). Thus, absent a false statement, Kalmar has not plausibly alleged a cause of action for false light invasion of privacy or defamation.[9]

Here, Kalmar vaguely asserts that the statements in the April 27, 2023 email are "false and defamatory" (Am. Compl., ¶ 52), and "untrue and verifiably false" (Id., ¶ 180), but fails even to identify any false statements. A plain reading of Defendant Scott's April 27, 2023 email reveals no statements that Kalmar genuinely alleges to be false, even when paired with the outcome of the Title IX Investigation. Kalmar does not and cannot allege that Defendant Scott was being untruthful when she wrote that she read one of Kalmar's course evaluations "with great horror". (Am. Compl., ¶ 24). Further, Defendant Scott's opinion regarding the "horrific" nature of this

---

[9] Even if Kalmar could establish the elements of defamation (he has not), he would be unable to prevail on a claim for defamation because Defendant Scott had a qualified privilege and Kalmar could not demonstrate the requisite "actual malice" to sustain that claim. *See Sygula v. Regency Hospital of Cleveland East*, 2016-Ohio-2843, ¶ 22 (8th Dist.).

course evaluation cannot support a claim for false light invasion of privacy. *See Olthaus,* 2023-Ohio-4710, ¶ 24 ("because statements of opinion are inherently not even capably of being 'untrue,' and because a defendant therefore cannot have 'had knowledge or acted in reckless disregard as to the falsity' of such statements, opinions cannot support false light invasion of privacy just as they cannot establish defamation.") (citations omitted).

Defendant Scott's April 27, 2023 email goes on to state that this was not the first time she had heard Kalmar's name detailing "inappropriate behavior of varying degrees." Kalmar does not challenge Scott's statement that she had in fact previously heard his name in connection with the unspecified "inappropriate behavior" -- regardless of whether he disputes that he engaged in any inappropriate behavior. The April 27th email then states that Defendant Scott "is conducting an investigation into Mr. Kalmar's behavior" and requests that any students with information (including the student from the anonymous course evaluation) contact her with further information. (Am. Compl., ¶ 24). Finally, Defendant Scott states that professors have reported "similar information" (which she again does not specify) to her in the past two weeks and that she intends to file a formal complaint, which would prompt an investigation. Again, Kalmar does not challenge the truth of that content.

To the extent Kalmar anchors his claims for false light invasion of privacy and defamation in Defendant Harrison's May 5, 2023 email (Am. Compl., ¶¶ 170-171), his claims similarly fail, since Kalmar cannot genuinely dispute the truth of those statements. In that email, Defendant Harrison stated only that CIM had initiated an <u>investigation</u> into <u>allegations</u> of <u>potential</u> misconduct – omitting any reference whatsoever to the specifics of those allegations or opining on the truth of the allegations. See Am. Compl., ¶ 46. Defendant Harrison went on to explain that

CIM had retained outside investigators "to conduct an independent, objective, fair and thorough investigation" – in no way suggesting what the findings might be. *See* Exhibit 2.

Presumably because Kalmar cannot meet his burden of pleading that Defendant Scott's April 27, 2023 email contains any false and defamatory statements, he recasts the email in an inflammatory light in an attempt to circumvent this requirement. Kalmar goes so far as to alter the content of the email entirely, maintaining it stated that "Maestro Kalmar had engaged in 'horr[ific]' sexual misconduct and inappropriate and illegal sexual behavior", and that his "inappropriate and illegal sexual behavior needed to be addressed." (Am. Compl., ¶ 39(c), (g)). But those are Kalmar's words – not Defendant Scott's; they appear nowhere in the April 27th email. The fact that Kalmar fails to rely on the actual content of the email to support his claims of falsity, and instead tortuously manipulates the email out of context, speaks volumes to the merits (or lack thereof) of his claims. None of the published statements are false. As such, Kalmar falls far short of plausibly alleging claims for false light invasion of privacy and defamation. *See Olthaus,* 2023-Ohio-4710.

I.  **Kalmar's Tortious Interference with Business Relationships Claim (Count X) Fails Because He Has Not Plausibly Alleged the Existence of Any Such Relationships, the CIM Defendants' Knowledge of Any Such Relationship, or that the CIM Defendants Intentionally Interfered with Any Such Relationship.**

Kalmar's Tenth Claim for Relief purports to state a claim for tortious interference with business relationships against the CIM Defendants, in addition to Defendant Scott. Under Ohio law, interference with business relationships or contracts occurs when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter or continue a business relation with another or not to perform a contract with another. *Wauseon Plaza Ltd. Psp. v. Wauseon Hardware Co*., 2004-Ohio-1661, ¶ 57 (6th Dist.); *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 14 (1995). To establish a

claim of tortious interference with a business relationship, the plaintiff must establish: "(1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiffs relationship; (3) that defendant intentionally and materially interfered with the plaintiffs prospective relationship; (4) the interference was without justification; and (5) the interference causes the plaintiff to suffer damages." *Edwards v. Woodforest Nat'l Bank*, No. 1:11-cv-2205, 2012 U.S. Dist. LEXIS 72974, at *9-10 (N.D. Ohio May 24, 2012). Here, Kalmar fails to plausibly allege the requisite elements against the CIM Defendants.[10]

First, Kalmar fails to allege or identify any business "relationship" or "prospect of a business relationship" that Plaintiff had with anyone other than unidentified potential "professional engagements." (Am. Compl., ¶¶ 108, 195). Nor does he plausibly allege that the CIM Defendants had knowledge of any of such potential engagements. Instead, Kalmar vaguely claims that the CIM Defendants knew about his alleged potential engagements "as evidenced by the recitations made in the Employment Contract." (Id., ¶ 193). Kalmar's failure to reference any such "recitation" is telling; the Agreement makes no mention of any of Kalmar's purported business relationships or prospective business relationships. In fact, the Agreement expressly states CIM's intention to hire a "Director of Orchestral and Conducting Programs who will devote primary energies to CIM". (Agreement, ECF Doc. 4-1, PageID # 144, Recital F).

Moreover, the Amended Complaint is silent as to the CIM Defendants' intent to interfere with any purported business relationships, proffering nothing but unsupported conclusions for that theory, which are insufficient for purposes of Civ. R. 12(b)(6). *See Krohn v. Ostafi,* 2020-Ohio-

---

[10] Even if Kalmar could establish the elements of tortious interference with a business relationship (he has not), he would still have to demonstrate the requisite "actual malice" to sustain that claim, because the qualified privilege that attaches to Kalmar's defamation claim likewise applies to all derivative torts, including his tortious interference claim. See *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 25 (7th Dist.).

1536, ¶ 21 (6th Dist.). As Kalmar has not plausibly alleged the essential elements, his claim for tortious interference with business relationships against the CIM Defendants must be dismissed.

**J.**  **The Amended Complaint Fails to Allege the "Extreme and Outrageous" Conduct Required to State a Claim for Intentional Infliction of Emotional Distress (Count XI), Nor Can Kalmar Plausibly Allege the CIM Defendants' Vicarious Liability.**

In Count XI, Kalmar asserts a claim for intentional infliction of emotional distress ("IIED") against Defendant Scott, and vicariously against the CIM Defendants based on their alleged "ratification" and "condonation" of Defendant Scott's April 27, 2023 email. (Am. Compl., ¶¶ 199-206). Kalmar's IIED claim against the CIM Defendants fails because the allegations of the Amended Complaint are insufficient to plead an underlying claim of IIED against Scott and, if they were, the CIM Defendants could not be vicariously liable for such conduct.

To establish IIED under Ohio law, a plaintiff must show: (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Beatty v. Progressive Cas. Ins. Co.,* No. 1:12-cv-2646, 2013 U.S. Dist. LEXIS 3414, at *5-6 (N.D. Ohio Jan. 9, 2013) (citing *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410 (1994), *Ridley v. Fed. Express*, 2004-Ohio-2543, ¶ 74 (8th Dist.).

Ohio courts apply intentional infliction standards strictly in employment actions. *Anthony v. TRW, Inc.,* 726 F. Supp. 175, 181 (N.D. Ohio May 8, 1989) ("Clearly then, to say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an

understatement."). "Liability has been found only where the conduct has been so outrageous, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Baab v. AMR Services Corp.,* 811 F.Supp. 1246, 1269 (N.D. Ohio 1993). Further, the issue of whether conduct "rises to the level of 'extreme and outrageous' conduct constitutes a question of law." *Jones v. Wheelersburg Local School Dist.*, 2013-Ohio-3685, ¶ 41 (4th Dist.).

Kalmar cannot genuinely allege that Defendant Scott's underlying statement was "extreme and outrageous" as Ohio courts have defined that requirement. *See Meminger v. Ohio State Univ.,* 2017-Ohio-9290, ¶ 18 (10th Dist.) ("a lawfully conducted investigation where wrongdoing is suspected, even if vigorously or oppressively undertaken, will not be characterized as extreme or outrageous."). This is true even when the investigation concerns serious matters, such as sexual harassment, and the results of the investigation exonerate the plaintiff. *See Hardie v. Shady Hollow Country Club,* 1996 Ohio App. LEXIS 2956 (5th Dist. 1996) (falsely accusing individual of sexual harassment insufficient to constitute extreme and outrageous conduct). Moreover, insofar as Kalmar acknowledges that Defendant Scott sent the April 27th email after reading the anonymous course evaluation, he can hardly contend the email was motivated purely by malevolence. As a matter of law, the Amended Complaint does not allege conduct that even approaches the "utterly intolerable" conduct required to state a claim for intentional infliction of emotional distress. *See Jones,* 2013-Ohio-3685 (collecting and comparing cases).

Further, even if Kalmar's allegations against Defendant Scott could satisfy his pleading requirements, the CIM Defendants could not, as a matter of law, be held liable for that underlying conduct. Kalmar alleges that Defendant Scott's "public disclosures" were specifically "intended to cause [him] serious emotional distress" (Am. Compl., ¶ 200); and that they were "undertaken

with malice and an intent to defame and harm [him]" (Id., ¶ 37). It is well settled that "the principal can only be liable for the intentional torts of the agent if the tortious conduct was committed within the scope of his or her employment." *Evans v. Thrasher*, 2013-Ohio-4776, (1st Dist.) ¶ 20 (citing *Thomas v. Speedway Superamerica, LLC,* 2006–Ohio–5068, ¶ 17 (9th Dist.)). But "an intentional and willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor." *Evans v. Thrasher*, 2013 Ohio-4776, ¶ 21 (citing *Byrd v. Faber,* 57 Ohio St.3d 46, 59 (1991)); *see also Fixel v. LSMJ1, LLC*, No. 22-CV-1896, 2023 U.S. Dist. LEXIS 176624, at *23 (N.D. Ohio Oct. 2, 2023) (an employer is vicariously liable for an employee's intentional infliction of emotional distress on another employee only if the company "promoted or advocated" the employee's behavior) (citations omitted).

Kalmar cannot have it both ways. If, as he alleges, Defendant Scott's April 27, 2023 email was so malevolent as to constitute an intentional infliction of emotional distress, then, as a matter of law, the CIM Defendants cannot be held vicariously liable for that conduct. Kalmar's threadbare allegations that the CIM Defendants "ratified" or "condoned" Defendant's Scott's conduct are a far cry from asserting that they "promoted" or "advocated" it; the Amended Complaint contains no allegations sufficient to satisfy that requirement. As such, Kalmar's IIED claim against the CIM Defendants fails on that ground as well.

### K.  Plaintiff Raffaela Kalmar Cannot State a Claim for Loss of Consortium (Count XII) Because Carlos Kalmar Has Not Alleged Bodily Injury.

In Count XII of the Amended Complaint, Raffaela Kalmar (Carlos Kalmar's wife) purports to state a claim for loss of consortium. However, Mrs. Kalmar cannot state such a claim because "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers *bodily injury*." *Bowen v.*

*Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992) (emphasis added); *see also Blatnik v. Dennison*, 148 Ohio App. 3d 494, 513 (11th Dist. 2002) (holding that a "claim for loss of consortium in this case cannot stand because there is no evidence of bodily injury sustained"); *Cunningham v. Hildebrand*, 142 Ohio App. 3d 218, 229 (11th Dist. 2001) (holding that the trial court properly dismissed the loss-of-consortium claim brought by the plaintiff's wife where it was derived from the plaintiff's emotional distress claim and involved no bodily injury to the plaintiff). Ohio courts have repeatedly held that the term "bodily injury" does not include nonphysical harms. *See Blatnik*, 148 Ohio App. 3d at 512; *Bowman v. Holcomb*, 83 Ohio App. 3d 216 (12th Dist. 1992).

The Plaintiffs do not allege that the CIM Defendants committed a tort which caused Carlos Kalmar bodily injury. As such, Count XII must be dismissed. *See Rogers v. Horwitz,* No. 1:20-cv-02568, 2023 U.S. Dist. LEXIS 174885, at *55-56 (N.D. Ohio Sept. 29, 2023) (dismissing plaintiffs' loss of consortium claim where plaintiffs did not plead bodily injury).

## V.    **CONCLUSION**

For the reasons set forth above, the Amended Complaint should be dismissed as against Defendants The Cleveland Institute of Music, Scott Harrison, Dean Southern, and Paul Hogle, on the ground that it fails to state any claims upon which relief can be granted pursuant to Rule 12(b)(6).

Respectfully submitted,

*/s/ Monica L. Lacks*
Rebecca J. Bennett (0069566)
Monica L. Lacks (0078649)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
rebecca.bennett@ogletreedeakins.com
monica.lacks@ogletreedeakins.com


Jantzen D. Mace (0099005)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Bank Building
88 East Broad Street, Suite 2025
Columbus, OH 43215
614.494.0420
614.633.1455 (FAX)
jantzen.mace@ogletree.com

*Attorneys for Defendants The Cleveland Institute*
*of Music, Scott Harrison, Dean Southern and*
*Paul Hogle*

## <u>CERTIFICATION</u>

Pursuant to Northern District of Ohio Local Rule 7.1(f), I certify that this case is assigned to the standard track and adheres to the modification of page limitations set forth in the Court's Non-Document Order of March 7, 2024, on which the Court granted  Defendants' Motion for Order to Exceed Page Limitation (Related Doc # 15).

/s/ Monica L. Lacks

*One of the Attorneys for Defendants The Cleveland Institute of Music, Scott Harrison, Dean Southern and Paul Hogle*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
Monica L. Lacks (0078649)

*One of the Attorneys for Defendants The Cleveland Institute of Music, Scott Harrison, Dean Southern and Paul Hogle*