# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **CARLOS KALMAR**<br>**c/o Spangenberg Shibley & Liber LLP**<br>**1001 Lakeside Ave. East, Suite 1700**<br>**Cleveland, OH  44114** )<br><br>)<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**THE CLEVELAND INSTITUTE OF MUSIC** )<br>**c/o Brian Foss, Registered Agent** )<br>**11021 East Blvd.** )<br>**Cleveland, OH  44106** )<br>)<br>and )<br>)<br>**VIVIAN SCOTT** )<br>**13413 Alvin Ave.** )<br>**Garfield Heights, OH  44105** )<br>)<br>and )<br>)<br>**SCOTT HARRISON** )<br>**c/o The Cleveland Institute of Music** )<br>**11021 East Blvd.** )<br>**Cleveland, OH  44106** )<br>)<br>and )<br>)<br>**DEAN SOUTHERN** )<br>**c/o The Cleveland Institute of Music** )<br>**11021 East Blvd.** )<br>**Cleveland, OH  44106** )<br>)<br>and )<br>)<br>**PAUL HOGLE** )<br>**c/o The Cleveland Institute of Music** )<br>**11021 East Blvd.** )<br>**Cleveland, OH  44106** )<br>)<br>_____ )<br>**Defendants.** ) | **CASE NO. 1:24-cv-193**<br><br>**JUDGE DAN AARON POLSTER**<br><br>_**SECOND AMENDED**_<br>_**COMPLAINT**_<br><br>**DEMAND FOR JURY TRIAL** |

Now comes Plaintiff, Carlos Kalmar, by and through undersigned counsel, pursuant to Federal Civil Rule 15(a)(1)(B) and agreement of the parties, and for his *Second Amended* Complaint against the above-captioned Defendants, states and avers as follows:

## PRELIMNARY STATEMENT OF THE CASE

Plaintiff Carlos Kalmar was an internationally acclaimed professional orchestra conductor and music director, having built his reputation over a lifetime of hard work and deserved recognition. As of April 2023, Maestro Kalmar was the Principal Conductor and Director of Orchestral and Conducting Programs at the Cleveland Institute of Music, who made his living as a highly coveted guest orchestra conductor throughout the United States and the world.

This case stems from the Cleveland Institute of Music's discriminatory and illegitimate federal Title IX investigation into Maestro Kalmar, which included illegal public disclosures of Kalmar's identity as the target of the investigation, as well as false and defamatory statements and inferences that he engaged in sexual misconduct before any investigation occurred, and the school's response to the ensuing firestorm in the press and on campus.

The school's conduct, including its public disclosure of Kalmar as the target of a confidential federal Title IX investigation, is entirely unprecedented. Plaintiff is unaware of any school or school administrator or officer ever having so blatantly violated the confidentiality mandates of Title IX and standard school policy.

Following a months' long investigation, Maestro Kalmar was cleared of any sexual misconduct. His reputation, however, had been irreversibly destroyed. Many students and faculty, misinformed as they were, publicly protested Kalmar. The school ultimately placated and surrendered to the misinformed and misled mob. Despite having been cleared of sexual misconduct, and without any administrative proceedings, the school stripped Maestro Kalmar of

his duties and placed him on involuntary "administrative leave," prohibiting him from coming on campus, from instructing students, and from performing as the school's Principal Conductor, effectively terminating him, and ending his career, all in violation of his employment contract.

The fall out for Maestro Kalmar, and his wife, has been devastating and swift. Kalmar's reputation, earned over a lifetime, has been ruined; he has been "canceled;" his professional opportunities to earn a living, previously abundant and lucrative, have evaporated. The emotional toll on Maestro Kalmar and his wife has been profound.

## JURISDICTION AND VENUE

1.      This action is brought, in part, pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et. seq.* ("Title IX").

2.      Additionally, Plaintiff seeks redress for his injuries, damage, and harm under Ohio statutory and common law causes of action, over which this Court has pendant jurisdiction.

3.      Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

4.      Plaintiff further invokes supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

5.      Venue is proper in the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1391 (b)(2), it being the judicial district in which the events giving rise to the claims occurred.

**THE PARTIES**

6.     At all times relevant, Plaintiff Carlos Kalmar ("Maestro Kalmar" or "Kalmar") is and was a resident of Ohio residing in Cuyahoga County within the Northern District of Ohio.

7.     At all times relevant, Defendant The Cleveland Institute of Music ("CIM" or the "School") was and is an Ohio corporation with its principal place of business located in Cuyahoga County within the Northern District of Ohio where it operates as a private music conservatory and school.

8.     At all times relevant, Defendant CIM was a "recipient" of federal funds under Title IX and was required to comply with Title IX statutes and regulations.

9.     At times relevant, Defendant Vivian Scott ("Scott") was employed by Defendant CIM as the School's Title IX Coordinator and Title IX Compliance Officer. At all times relevant, Defendant Scott was acting within the course and scope of her employment and/or agency with Defendant CIM rendering Defendant CIM vicariously liable for her conduct alleged herein.

10.     At all times relevant, Defendant Scott Harrison ("Harrison") was employed by CIM as the School's Executive Vice President and Provost. At all times relevant, Defendant Harrison was acting within the course and scope of his employment and/or agency with Defendant CIM rendering Defendant CIM vicariously liable for his conduct.

11.     At times relevant, Defendant Dean Southern ("Southern") was employed by CIM as the School's Vice President of Academic and Student Affairs, Dean of the Institute, and "Acting" Title IX Coordinator. At all times relevant, Defendant Harrison was acting within the course and scope of his employment and/or agency with Defendant CIM rendering Defendant CIM vicariously liable for his conduct.

4

12.     At all times relevant, Defendant Paul Hogle ("Hogle") was employed by Defendant CIM as the School's President and Chief Executive Officer ("CEO"). At all times relevant, Defendant Hogle was acting within the course and scope of his employment and/or agency with Defendant CIM rendering Defendant CIM vicariously liable for his conduct.

**FACTS**

13.     Plaintiffs incorporate by reference each and every preceding allegation as if fully restated herein.

14.     As of April 2023, Plaintiff Carlos Kalmar was a successful professional orchestra conductor. Born in Uruguay to Jewish Austrian immigrants, Maestro Kalmar began his musical studies at the age of six. At 15 he was accepted into the Vienna Academy of Music. In 1984, he won first prize in the Hans Swarowsky International Conducting Competition.

15.     Maestro Kalmar has served as Music Director for numerous institutions around the world, including the Hamburg Symphony Orchestra, the Stuttgart Philharmonic Orchestra, the Anhaltisches Theater in Dessau, the Tonkunstler Orchestra in Vienna, the RTVE Madrid, and the Oregon Symphony Orchestra in Portland, Oregon. He has served as Artistic Director and Principal Conductor of the Grant Park Music Festival featuring the Grant Park Symphony Orchestra in Chicago, Illinois. Maestro Kalmar has conducted in prestigious venues all around the world, including for the National Orchestra of Wales, the Czech Philharmonic Symphony Orchestra, the Rotterdam Philharmonic Symphony Orchestra, the Helsinki Philharmonic Symphony Orchestra, the Berlin Radio Symphony Orchestra, the Frankfurt Radio Symphony Orchestra, the Orchestra of Tuscany, the Orchestra of Salzburg, the Vienna Radio Symphony Orchestra, the NHK and Yomiuri Symphony Orchestras in Tokyo, the Singapore Symphony Orchestra, and the Malaysian Philharmonic Orchestra, to name a few. In the United States, Maestro Kalmar has conducted the

Orchestras of/in Baltimore, Milwaukee, Chicago, Boston, Philadelphia, Los Angeles, San Francisco, Houston, Seattle, Dallas, Cincinnati, Nashville, St. Louis, and Minnesota.

16.     Maestro Kalmar has received three Grammy Award nominations for Best Orchestral Performance.

17.     Throughout his career, Maestro Kalmar has conducted residencies, teaching students at the Colburn School in Los Angeles, the Hanns Eisler School of Music in Berlin, the Indiana University Jacobs School of Music, the New England Conservatory, the Julliard School, and Yale's School of Music.

18.     As of April 2021, Defendant CIM "wishe[d] to be the gold standard in orchestral ensemble preparation, training and artistic quality among America's conservatories and top schools of music" and "want[ed] to build an orchestral training program and environment at the professional level in which to rigorously teach young musicians how to perform as Tier I orchestral musicians…" Agreement Between The Cleveland Institute of Music and Carlos Kalmar (the "Employment Contract"), at p. 1, Exhibit 1 attached.

19.     Defendant CIM "want[ed] a Director of Orchestral and Conducting Programs who… sets and maintains an environment of high standards and high expectations who… [would] tirelessly pursue a relentlessly high musical and technical learning environment" at CIM. *Id*.

20.     Accordingly, on April 13, 2021, after a comprehensive vetting process undertaken by the School, Defendant CIM and Kalmar entered an Employment Contract by which "CIM employ[ed] Kalmar as Director of Orchestral and Conducting Programs and Principal Conductor." *Id*. at p. 2. The terms of Maestro Kalmar's employment at CIM were, in part, governed by the Employment Contract, including, but not limited to, Kalmar's rights, duties, professional opportunities, and responsibilities as the Director of the Orchestral and Conducting Programs, as

Principal Conductor, to whom Kalmar was and was not required to report, the discretion and control Kalmar was afforded over the Programs for which he was Director, the percentage of CIM Orchestra concerts Kalmar had the exclusive right to conduct, Kalmar's right to choose guest conductors, his right and obligation to pursue professional conducting engagements and relationships outside of CIM, grounds for termination, and numerous other terms of Kalmar's employment at CIM. The full Employment Contract is attached as Exhibit 1.

21.     Defendant CIM performed a pre-hiring investigation into Maestro Kalmar's background and did not discover a single instance of an allegation of sexual misconduct or discrimination ever made against him.

22.     Prior to joining CIM, Maestro Kalmar had never been accused of any type of sexual misconduct or discrimination anywhere over the course of his decades' long career.

23.     Maestro Kalmar has never discriminated against anyone based on his or her sex, or treated musicians – students or professionals – differently based on their gender. He has never engaged in any kind of sexual harassment or misconduct.

24.     Upon being hired by CIM, Maestro Kalmar assumed his role as Director of Orchestral and Conducting Programs and Principal Conductor, including "set[ting] and unapologetically maintain[ing] expectations for rehearsals [and] performances" "to appropriately prepare students for successful professional orchestra careers" as required by the terms of his Employment Contract. *Id*. at p. 4.

25.     On April 27, 2023, apparently after reading an anonymous year-end course evaluation form, then CIM Title IX Coordinator and Director of Title IX Compliance, Defendant Vivian Scott, wrote, sent, published, and publicized the following email to all CIM students, and others:

Dear Students,

It was with great horror that I read one of Carlos Kalmar's course evaluations. This is not the first time I have heard his name – detailing inappropriate behavior of varying degrees.

As the Title IX Coordinator, it is my responsibility to address this behavior, but the law only gives me so much room to do so. Without hearing details of behavior that clearly violates Title IX, or without individuals who are willing to attest to that same behavior, I am unable, by law, to do anything about it. I am conducting an investigation into Mr. Kalmar's behavior, but I need your help. If you are willing, I am asking of you the following:

Will the student who wrote the evaluation that began with, "I know most of the people who will read this are men, but I also invite you to think about what it's like to be a woman in his orchestra." Please contact me? These details are very important to my investigation. If I have spoken to you at a prior time, and you were hesitant to provide specific details that fall under Title IX, please consider meeting with me again. If you have experienced (or observed) behavior on Mr. Kalmar's behalf that can be considered sexual harassment, please contact me if you are willing to provide details. Please be aware that retaliation in any form toward a person who provides this information to me in the course of my investigation is PROHIBITED by law and can be punishable to an even greater degree than the offense itself.

Please also know that your professors have your back! Several of them have come to me in the past two weeks to share similar information with me.

I am filing a formal complaint, so you won't have to. This is what will result in the investigation that is being conducted. I am able to meet with students by appointment in my office (216), virtually on Zoom, or over at CIA (in room 106), if you would prefer that no one see you come to my office at CIM.

Please know that the information you provide will not be shared with other employees at CIM, other than those responsible for facilitating the Title IX Hearing, and that your cooperation will not result in any negative academic consequences to you.

Please remember that there is strength in numbers, so the more of you that come forward, the stronger this case can be, and we can move back toward making CIM a safe place that offers you the space and supportive environment that fosters your growth as the phenomenal musicians that you are.

Thank you,

Vivian

Vivian R. Scott
Director, Title IX Compliance/Title IX Coordinator
Cleveland Institute of Music
Email: Vivian.scott@cim.edu

26.     The email Defendant Scott published and publicized was widely disseminated to CIM students and faculty members, and beyond the CIM community.

27.     Defendants Scott and CIM discriminated against Maestro Kalmar based on his gender and treated him differently than similarly situated females at CIM in many respects, including, but not limited to:

a.  Initiating and subjecting Maestro Kalmar to a Title IX investigation for conduct that did not and could not constitute sex discrimination or sexual harassment prohibited by Title IX and/or CIM's policies for which similarly situated female employees at CIM have never been subjected to investigation;

b.  Taking jurisdiction over alleged misconduct and alleging sexual misconduct against Kalmar for purposes of a Title IX investigation for alleged conduct that could not constitute sex discrimination or sexual harassment and/or that was not on the basis of sex, that, when undertaken by similarly situated female employees or students at CIM has never been considered misconduct and over which CIM has never taken jurisdiction for purposes of Title IX;

c.  Alleging and/or taking jurisdiction over alleged misconduct against Maestro Kalmar that, when undertaken by similarly situated female employees or students at CIM, has never been alleged to be misconduct, investigated, or even considered as potential sexual misconduct, including but not limited to, adjusting the clothing around one's groin and thigh area, looking over a musician's shoulder to read music during rehearsal and instruction, placing hands on a student's chair during rehearsal/instruction, placing one's hand(s) on a student's shoulder during rehearsal/instruction, whispering, and standing one to two feet from a student;

d.  Taking adverse employment action against Maestro Kalmar for alleged conduct and under circumstances where similarly situated female employees and students at CIM were not and have never been subjected to adverse action;

e.  Violating Kalmar's right to remain confidential under Title IX and CIM policy(ies) while protecting the rights of similarly situated females' under the same Title IX provisions and CIM policy(ies) in connection with the same Title IX investigation/proceedings;

f.  Publicly disclosing Kalmar's identity in connection with the Title IX investigation/proceedings at issue while keeping the identities of similarly situated female individuals involved in the same investigation/proceedings confidential;

g.  Publishing and publicizing defamatory and misleading statements, and disclosing private information about Maestro Kalmar in connection with the Title IX investigation/proceedings at issue while making no such statements and protecting from disclosure private information concerning similarly situated female individuals involved in the same investigation/proceedings;

h.  Only investigating male employees and students at CIM for alleged sexual misconduct, including Maestro Kalmar, without ever investigating similarly situated female employees and students;

i.  Selectively enforcing or applying CIM sexual discrimination and harassment policies and Title IX requirements against male employees and students at CIM as compared to similarly situated female employees and students;

j.  Violating CIM's procedural and substantive requirements for Title IX investigations in connection with the investigation into Kalmar while abiding by those procedural and substantive requirements in favor of similarly situated female employees and students at CIM;

k.  Alleging that and/or evaluating benign conduct, when undertaken by Maestro Kalmar, to amount to sex discrimination or sexual harassment, while considering the same conduct benign when undertaken by similarly situated female employees and students at CIM; and

l.  Interfering with Mestro Kalmar's rights and privileges afforded him under Title IX and its regulations while protecting and abiding by the rights of similarly situated female employees and students under the same statute and regulations, including in the same Title IX investigation/proceedings.

28.  Title IX regulation C.F.R. § 106.71, Subpart F – Retaliation, provides, in pertinent part, that "Retaliation [is] prohibited." Specifically, 106.71(a), entitled ***"Retaliation prohibited,"*** provides that:

> ***No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this part***… Intimidation, threats, coercion, or discrimination… for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation. ***The recipient must keep confidential the identity of*** any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, ***any individual who has been reported to be the perpetrator of sex discrimination, any respondent***, and any witness, except as may be permitted by the FERPA statute, 20 U.S.C. 1232g, or FERPA regulations, 34 CFR part 99, or as required by law, or to carry out the purposes of 34 CFR part 106, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder. (Emphasis added).

29.     At all times relevant, as a CIM employee, Maestro Kalmar enjoyed and was afforded the protections of the rights and privileges secured by Title IX and its related Regulations, including Subpart F, 34 C.F.R. § 106.71.

30.     As of April 27, 2023, Defendant CIM posted its Title IX training materials and policies online, as required, which track and impose the same requirements and duties set forth in Title IX and its regulations, including the rights, privileges, and requirements set forth in Subpart F, 34 C.F.R. § 106.71.

31.     At all times relevant, Defendant CIM's policies prohibited discrimination based on sex and provided procedures and requirement by which Title IX investigations at CIM must proceed.

32.     Within the context of Defendant Scott's April 27, 2023 email, Plaintiff Carlos Kalmar was a respondent and/or an alleged perpetrator of sex discrimination within the meaning of 34 C.F.R. § 106.71(a) and CIM's applicable policies.

33.     Defendant Scott disclosed her identity as the individual who was "filing a formal complaint" under Title IX in her email dated and published on April 27, 2023.

34.     Defendant Scott disclosed Plaintiff Carlos Kalmar's identity in her email dated and published on April 27, 2023.

35.     Defendant Scott disclosed her identity in her email dated and published on April 27, 2023, in violation of 34 C.F.R. § 106.71(a).

36.     Defendant Scott disclosed Plaintiff Carlos Kalmar's identity in her email dated and published on April 27, 2023, in violation of 34 C.F.R. § 106.71(a).

37.     Defendant Scott's April 27, 2023 email violated CIM's own policies and procedures, including CIM's Title IX policies and procedures.

38.     No CIM student or faculty member ever made a formal Title IX complaint against Plaintiff Carlos Kalmar.

39.     As defined by CIM's policies, there was no jurisdiction for CIM to undertake any Title IX investigation into any alleged conduct on behalf of Maestro Kalmar.

40.     The conduct Maestro Kalmar was alleged to have engaged in did not and could not constitute sex discrimination or sexual harassment, and was not on the basis of sex.

41.     CIM's Title IX investigation targeting Maestro Kalmar was discriminatory and illegitimate.

42.     Defendant Scott's April 27, 2023 email violated Maestro Kalmar's rights under Title IX, including, but not limited to, his rights to remain anonymous/to confidentiality, to be "presumed not responsible" for any potential or alleged misconduct, to not be retaliated against, and to a fair, impartial, and non-discriminatory Title IX investigation process undertaken and overseen by unbiased investigators and administrators/officers.

43.     Defendant Scott's April 27, 2023 email included false and defamatory statements and inferences/innuendo, disclosed information that Defendant CIM and Defendant Scott were

12

under a legal duty not to disclose, disclosed private facts and information that Defendants CIM and Scott were under a legal duty not to disclose, violated Kalmar's privacy interest and right to privacy, and portrayed Maestro Kalmar in a false light.

44. Defendant Scott's disclosures, statements, and inferences/innuendo in her April 27, 2023 email were made and undertaken with malice and an intent to defame and harm Maestro Kalmar and/or with a reckless disregard for the truth under circumstances where it was foreseeable and substantially certain to result in severe reputational harm, lost employment opportunities, and severe emotional distress.

45. Defendant Scott knew the statements and disclosures in her April 27, 2023 email were false, falsely portrayed Kalmar, and/or she acted with reckless disregard for whether they were true under circumstances where she knew the statements and disclosures would cause substantial reputational and professional and emotional harm to Maestro Kalmar.

46. The following statements, disclosures, and inferences/innuendo, individually and collectively, in Defendant Scott's April 27, 2023 email violated Title IX, were discriminatory, false and/or misleading, portrayed Maestro Kalmar in a false light, and/or revealed private information that was prohibited from disclosure:

    a. Statements that Maestro Kalmar was the target of a Title IX investigation;

    b. Statements and inferences that Kalmar had engaged in inappropriate and illegal behavior that violated Title IX;

    c. Statements and inferences that Maestro Kalmar had engaged in "horr[ific]" sexual misconduct and inappropriate and illegal sexual behavior;

    d. Statements and inferences that Kalmar had violated Title IX;

    e. Statements and inferences that Kalmar had engaged in conduct that "clearly violated" Title IX;

13

    f.   Statements and inferences that CIM was not a safe place with Maestro Kalmar there;

    g.   Statements and inferences that Kalmar's inappropriate and illegal sexual behavior needed to be addressed;

    h.   Statements and inferences that Kalmar had a history of engaging in improper and illegal sexual misconduct;

    i.   Statements that CIM's Title IX Coordinator and Compliance Officer was initiating a Title IX investigation into Maestro Kalmar;

    j.   Statements that CIM's Title IX Coordinator and Compliance Officer was conducting a Title IX investigation into Kalmar;

    k.   Statements that CIM's Title IX Coordinator and Compliance Officer was filing a formal Title IX complaint against Maestro Kalmar;

    l.   Statements that CIM's Title IX Coordinator and Compliance Officer was filing a Title IX complaint against Kalmar so no student had to;

    m.   Statements that the professors at CIM "had the students' back[s]" concerning Maestro Kalmar's misconduct;

    n.   Statements encouraging students that there was "strength in numbers" soliciting many students to come forward to unite against Kalmar and his dangerous sexual behavior;

    o.   Statements that students needed to respond to her email and unite to get rid of Kalmar to make the school a safe place again; and

    p.   Statements soliciting students to come forward with any potentially damning information or accusations against Kalmar to assist in the investigation, to accomplish the objective of getting rid of Maestro Kalmar.

47.    Title IX prohibited Defendant CIM from disclosing Kalmar's identity in connection with all of the statements set forth in the preceding paragraph and subparts.

48.    Shortly after Defendant Scott published her April 27, 2023 email, CIM Graduate Student Ambassador, Sol Rizzato, emailed All-Students@cim.edu to "follow up on Vivian Scott's ([CIM's] Title IX coordinator) email" in which Mr. Rizzato "echo[ed] [Ms. Scott's] words exactly" and reiterated the need to "move back toward making CIM a safe place."

49.     A significant number of CIM students and faculty members accepted Defendant Scott's April 27, 2023 email at face value and believed the statements and inferences contained therein, including that CIM was not a safe place with Maestro Kalmar present.

50.     Defendant Scott's April 27, 2023 email was widely published, publicized, and disseminated.

51.     Predictably, media outlets promptly began reporting on Ms. Scott and Mr. Rizatto's emails, often republishing them, including on the internet where Ms. Scott's email and the stories reporting on it, and many others that would follow, remain to this day, and will exist forever.

52.     Almost immediately upon publication of Defendant Scott's April 27, 2023 email and the media coverage thereof, Maestro Kalmar began losing professional engagements, opportunities, and income.

53.     On May 5, 2023, CIM Executive Vice President and Provost, Defendant Scott Harrison, sent, published, and publicized another email to the entire "CIM Community," including at least all students and faculty members at the School. The subject line of Defendant Harrison's email was "Update regarding Title IX investigation" and went on to read, in part, "As you likely are aware, CIM has initiated an investigation into the allegations of potential misconduct by Carlos Kalmar."

54.     Defendant Harrison's May 5, 2023 email disclosed Maestro Kalmar's identity in violation of Title IX and CIM's policies and procedures.

55.     Defendant Harrison did not "update" the recipients of his email on the identity of any similarly situated female employees or students involved in the Title IX investigation. Rather, Defendant Harrison treated them differently by keeping their identities confidential.

56.     Defendant Harrison discriminated against Kalmar based on his gender by disclosing Kalmar's name in his May 5, 2023 email. CIM did not and has never disclosed the identity of any similarly situated female employees or students at CIM in the way Defendant Harrison disclosed Kalmar's identity in his May 5, 2023 email.

57.     Defendant Harrison's May 5, 2023 email violated Maestro Kalmar's rights under Title IX, including, but not limited to, his rights to remain anonymous/to confidentiality, to be "presumed not responsible" for any potential or alleged misconduct, to not be retaliated against, and to a fair and impartial Title IX investigation process undertaken and overseen by unbiased investigators and administrators/officers.

58.     As reflected in Defendant Harrison's May 5, 2023 email, the "CIM Community" was "likely aware" of a Title IX investigation involving Plaintiff Carlos Kalmar because of the illegal disclosures contained in Defendant Scott's email days earlier on April 27, 2023.

59.     To the extent any students or faculty members in the "CIM Community" were not aware of nay potential Title IX sexual misconduct investigation involving Maestro Kalmar, Defendant Harrison's May 5, 2023 email disclosed Kalmar as the target of such an investigation.

60.     Prior to publishing and disseminating his May 5, 2023 email, Defendants Harrison and CIM were advised and instructed, in writing, that Defendants Scott and CIM had violated Kalmar's rights under Title IX by disclosing his identity in Defendant Scott's April 27, 2023 email, and that any continued disclosures of Kalmar's identity would again violate Kalmar's rights under Title IX.

61.     Despite the notifications referenced in the preceding paragraph, and requests and demands to protect Maestro Kalmar's identity confidential moving forward, and despite being on

notice of the confidentiality requirements under Title IX and CIM's policies,  Defendants Harrison

and CIM again publicly disclosed Kalmar's identity in Defendant Harrison's May 5, 2023 email.

62.     Defendant Harrison's May 5, 2023 email made no statements that Maestro Kalmar

was "presumed not responsible for [any] alleged [mis]conduct."

63.     Defendant Harrison's email did nothing to correct or otherwise address the false,

defamatory, and misleading statements and inferences, or the improper disclosure of private

information contained in Defendant Scott's April 27, 2023 email.

64.     Defendant Harrison's May 5, 2023 email was silent about the improper disclosures

and Title IX violations committed by Defendant Scott in her April 27, 2023 email. Rather, by

providing an "update" on Defendant Scott's alleged investigation referenced in her April 27, 2023

email, Defendants Harrison and CIM ratified, adopted and/or endorsed all of Defendant Scott's

statements, inferences, and disclosures contained in her email.

65.     Defendant Harrison's May 5, 2023 email provided the names and contact

information of outside Title IX investigators Defendant CIM retained to perform the investigation

"CIM initiated," encouraging students and faculty members to reach out, thereby violating Maestro

Kalmar's rights to a fair, impartial, and unbiased Title IX investigation and process.

66.     Defendant CIM discriminated against and treated Maestro Kalmar differently based

on gender by publicly announcing CIM's Title IX investigation into Kalmar, including soliciting

participation by the CIM faculty and student body at large to come forward with potentially

damning information about Kalmar.

67.     Defendant CIM did not disclose the names or identities of any similarly situated

female employees or students who enjoyed the same right of confidentiality under Title IX and

CIM's policies as did Kalmar.

17

68.     Defendant CIM has never publicly solicited and encouraged the CIM student body and faculty at large to come forward and provide potentially damaging information against a similarly situated female target of a Title IX or any other confidential investigation at CIM. In this respect, Defendant CIM treated Kalmar differently and discriminated against him based on his gender.

69.     None of the Defendants have ever, to this day, disclosed Defendant Scott's Title IX violations or otherwise done anything to attempt to correct them publicly. Rather, Defendants Harrison, Scott, Hogle, and CIM have ratified and adopted Defendant Scott's statements and conduct, and have acted with deliberate indifference to Maestro Kalmar's rights under Title IX and CIM's own policies and procedures.

70.     Despite the statements and representations made in her April 27, 2023 email, Defendant Scott never filed any formal Title IX complaint against Maestro Kalmar.

71.     Despite the statements and representations made in her April 27, 2023 email, Defendant Scott never conducted any Title IX investigation into any alleged conduct by Maestro Kalmar.

72.     According to the Title IX Investigation Report, CIM "suspended" Defendant Scott from participating in the Title IX investigation.

73.     In July 2023, Defendant CIM terminated Defendant Scott, later publicly explaining that her termination was not disciplinary; rather, the School had decided to "eliminate[] the dedicated Title IX position" at CIM altogether.

74.     Defendant CIM never disciplined Defendant Scott for violating Maestro Kalmar's rights under Title IX or for violating Title IX and CIM's policies and procedures. Defendant CIM ratified, adopted, and endorsed Defendant Scott's statements and conduct.

75.     Defendant Scott was not qualified or competent to serve as a Title IX coordinator or compliance officer at the time she was hired into and/or serving in that role at/for Defendant CIM.

76.     Defendant CIM was negligent and reckless in its hiring, training, and supervision of Defendant Scott at all times relevant to the allegations in this Complaint.

77.     At some point after terminating Defendant Scott, CIM's Vice President of Academic and Student Affairs and Dean of the Institute, Defendant Dean Southern, became CIM's "Acting Title IX Officer."

78.     Defendant CIM's purported Title IX investigation into Maestro Kalmar lasted several months.

79.     Maestro Kalmar fully complied with and participated in the investigation.

80.     Defendant CIM discriminated against Kalmar and treated him differently based on his gender as compared to similarly situated female employees and students in the manner in which it undertook and conducted the purported Title IX investigation, including violating its own policies and procedures governing Title IX investigations. These violations include, but are not limited to:

    a.  Violating the jurisdiction requirements and policies/procedures;

    b.  Not providing Kalmar with written notice of any formal complaint, including notification of the information and details required as set forth in CIM's written policies;

    c.  Not contacting or otherwise offering any supportive measures to Kalmar as required by CIM's policies;

    d.  Not dismissing any alleged complaint(s) at the required time as required under the terms of CIM's written policies; and

    e.  Not providing any written determination of responsibility, including the information required in CIM's policies.

81.     Defendant CIM discriminated against Maestro Kalmar and treated him differently than other similarly situated female employees and students at CIM for whom CIM did follow its written policies and procedures governing Title IX investigations.

82.     Kalmar has consistently maintained that he never engaged in any sexually inappropriate or discriminatory behavior – not at CIM and not anywhere else at any institutions throughout the country or around the world during his decades' long career.

83.     Maestro Kalmar was cleared of any sexual misconduct in violation of Title IX by the Title IX investigation.

84.     The Title IX investigation revealed no Title IX violations committed by Maestro Kalmar.

85.     Defendant CIM never made any findings or determinations that Maestro Kalmar violated Title IX.

86.     Defendant CIM never made any findings or determinations, based on the Title IX investigation, that Maestro Kalmar violated any CIM policies to which he was subject.

87.     Defendant CIM never made any findings or determinations, based on the Title IX investigation, that Maestro Kalmar was deficient in his duties under the terms of his Employment Contract.

88.     No disciplinary action was taken against Maestro Kalmar because of the Title IX investigation.

89.     Maestro Kalmar was exonerated by the Title IX investigation.

90.     Defendant CIM did not initiate or pursue any disciplinary or administrative proceedings against Maestro Kalmar based on the findings of the Title IX investigation.

91.    At the conclusion of the Title IX investigation, Defendant CIM did not initiate or pursue any proceedings or make any claims that Maestro Kalmar had engaged in any behavior that violated Title IX.

92.    At the conclusion of the Title IX investigation, Defendant CIM did not initiate or pursue any proceedings against Maestro Kalmar claiming he had violated any CIM policies or procedures.

93.    At the conclusion of the Title IX investigation, Defendant CIM did not seek to discipline Maestro Kalmar for any wrongdoing or misconduct.

94.    At the conclusion of the Title IX investigation, Defendant CIM took no adverse employment action against Maestro Kalmar under the terms of his Employment Contract because of any findings of the Title IX investigation.

95.    At the conclusion of the Title IX investigation, Defendant CIM did not initiate or pursue any proceedings requesting Maestro Kalmar to cure any alleged deficiencies in the performance of his duties under the terms of his Employment Contract.

96.    Following the Title IX investigation, Maestro Kalmar still had the right to be "presumed not responsible for [any] alleged misconduct" and in fact was not responsible.

97.    By the time the Title IX investigation was concluded, in or around September 2023, CIM students and faculty had returned to campus from the summer break, and it was clear to Defendants CIM, Hogle, Harrison, and Southern that since the time Defendant Scott and Defendant Harrison's emails were published and publicized, a significant number of students and faculty members believed Maestro Kalmar had engaged in inappropriate sexual behavior, at a minimum.

98.     Many students and faculty came to believe that Defendant CIM, which has a well-publicized history of mishandling sexual harassment allegations, fired Defendant Scott for trying to expose Maestro Kalmar as someone who engaged in dangerous sexual discrimination, harassment, and misconduct against female CIM students.

99.     Following the Title IX investigation, and after Defendant CIM determined there was no basis to proceed with any disciplinary, administrative and/or grievance process or hearing seeking to establish any wrongdoing by Maestro Kalmar, Defendant Southern sent another email to the "CIM Community" in which he stated, among other things, that:

> a.  While the findings of a Title IX investigation are not normally communicated beyond the parties, in light of the public attention surrounding this case, I have decided to share this update with you.
>
> b.  The investigation found that the alleged conduct could not constitute sex discrimination or sexual harassment as prohibited by Title IX because the conduct did not have "the purpose or effect of substantially or unreasonably interfering with a person's participation in educational programs or activities…" "Moreover, the conduct was not on the basis of sex, nor was it so severe or pervasive as to create an objectively offensive environment such that it denies anyone equal access to educational opportunities at CIM based on gender. Therefore, the Institute was obligated to dismiss the Formal Complaint of Sexual Harassment in this matter.

100.    Defendant Southern's email violated Title IX, including Maestro Kalmar's rights under Title IX, and CIM's policies, including by again publicly disclosing Kalmar's identity.

101.    Defendant CIM discriminated against and treated Kalmar differently based on gender by publicly disclosing his name and the "results" of its purported Title IX investigation in the manner it did. Defendant CIM did not disclose the identity of similarly situated female employees or students in Defendant Southern's email, and upon information and belief, has never disclosed the identity of similarly situated female employees or students in such a fashion.

102.    Defendant Southern's email did not state that Maestro Kalmar is presumed not responsible or that he was innocent and made no mention of the Title IX violations committed by Defendants Scott, Harrison, and Southern.

103.    It immediately became clear that a significant portion of the student body and CIM faculty were dissatisfied with and suspicious of the results of the Title IX investigation as reported by Defendant Southern, as was clearly reflected in public social media posts and emails, including by CIM's Student Government Association, on Defendant CIM's network.

104.    Students, alumni, and faculty members signed and posted petitions and sent letters to Defendant CIM leadership, including Defendants, in which they stated explicitly that they doubted Maestro Kalmar's "innocence."

105.    Defendant CIM never issued any public explanations or statements supporting Maestro Kalmar or declaring his "innocence" relative to any Title IX allegations or Defendant Scott's claims in her email.

106.    Students communicated threats to Defendants to boycott Maestro Kalmar's classes, rehearsals, and concerts, in connection with which they threatened to refuse to arrive prepared to participate or at all, and would refuse to bring their instruments with them, all in violation of the students' duties set forth in CIM's Student Code of Conduct.

107.    Per his Employment Contract, Maestro Kalmar had and has the exclusive duty, right, and discretion to determine, among other things, rehearsal structure, schedules, protocol, and requirements, as well as grades any given student will receive.

108.    Per his discretion, and Defendant CIM's rules for students set forth in the Student Code of Conduct, refusing to participate, or failing to bring instruments, or arriving to classes and concerts and practices unprepared, violates Maestro Kalmar's expectations and requirements and

is grounds for a failing grade and other disciplinary measures up to and including expulsion from any given class, program, or the School. Indeed, it is the students at CIM who are expected to and must follow the rules, as well as Maestro Kalmar's requirements.

109.    Rather than enforce its own rules or Student Code of Conduct, or support Maestro Kalmar in the exercise of his exclusive authority, and in violation of Kalmar's Employment Contract, Defendants CIM, Harrison, Hogle, and Southern catered to and placated the misinformed and misled students, permitted them to publicly demonstrate and boycott Maestro Kalmar by refusing to participate in his classes, rehearsals, training sessions, and concerts, and prohibited Maestro Kalmar from treating or grading these students accordingly, despite his exclusive right to do so under his Employment Contract, all without any repercussions to these students or participating faculty members.

110.    Conceding to the students and faculty members in this regard, without ever disclosing or explaining what had really transpired in connection with the discriminatory and illegitimate Title IX investigation, or the violations and illegal disclosures and misstatements by Defendants Scott, Harrison, and Southern, operated to exacerbate the misinformation and misunderstood basis upon which these students and faculty members were operating.

111.    In violation of his Employment Agreement, Defendants did not provide Maestro Kalmar with the administrative support and services to which he was entitled under the Agreement and the law under the circumstances.

112.    The circumstances, created and exacerbated by Defendants, under which Maestro Kalmar was forced to try to work upon resuming his position and duties at the beginning of the 2023-2024 academic year at CIM were overwhelmingly difficult, humiliating, and untenable for Kalmar.

113.    Media outlets covered and reported on the students' protests and the situation on campus, all stemming from Defendants CIM, Scott, Harrison, and Southern's illegal and defamatory disclosures and statements.

114.    Nevertheless, Maestro Kalmar performed under the terms of the Employment Agreement and/or stood ready to perform but for Defendants' breaches of the Employment Agreement and actions which made it impossible for Kalmar to perform.

115.    At around 8:00 PM on September 28, 2023, Defendant CIM "relieved" Maestro Kalmar of his duties and placed him on an involuntary "leave of absence."

116.    Defendant CIM has never initiated any disciplinary proceedings against Maestro Kalmar for any violations of any CIM policies or rules.

117.    Defendant Hogle has never provided Maestro Kalmar with any written notice of alleged acts of insubordination committed by Kalmar.

118.    Maestro Kalmar has never committed any acts of insubordination per the terms of the Employment Agreement.

119.    Defendant CIM has never provided Maestro Kalmar with written notice of any alleged breach of a material CIM employment policy by Kalmar.

120.    Maestro Kalmar has never breached any material CIM employment policy as described in the Employment Agreement.

121.    To the extent Defendant CIM alleges that Maestro Kalmar breached a material employment policy of Defendant CIM, Maestro Kalmar cured any alleged breach within 30 days.

122.     Defendant CIM, by and through the individual Defendants, and by and through other CIM employees and agents, has breached the terms of the Employment Contract and interfered with and violated Maestro Kalmar's rights afforded him under the Employment

Contract, including by violating the terms set forth in the following sections of the Employment Contract:

      a.  4.a.i. through 4.a.viii.

      b.  4.b.i. through 4.b.v.

      c.  4.c.i. through 4.c.vi.

      d.  4.d.i.-4.d.ii, and 4.d.v.

      e.  5.c.

      f.  5.g.

      g.  5.h. and

      h.  8.b.

123.    Defendant CIM breached its policies and procedures which are implied terms of his employment contract and/or constitute an implied contract and/or is liable to Kalmar for violating its policies and procedures under the doctrine of promissory estoppel.

124.    Defendant CIM constructively and effectively discharged Maestro Kalmar in violation of the Employment Contract.

125.    Local, national, and international media outlets continued, and continue to this day, to report on the situation at CIM involving Maestro Kalmar, including associating him with allegations of sexual harassment, discrimination, and misconduct, reporting on CIM students and faculty publicly boycotting and protesting against Maestro Kalmar, and Kalmar being placed on "leave" immediately following what was made to be a publicly known Title IX sexual misconduct investigation against Kalmar undertaken by Defendant CIM.

126.    Social media posts concerning the matters set forth in the preceding paragraph are abundant, widespread, accumulating, and permanent.

127.    Since Defendant Scott published and disseminated her April 27, 2023 email, and continuing thereafter, Maestro Kalmar has incurred multiple cancellations, non-renewals, and the inability to book professional engagements anywhere near the level he was capable of prior to April 27, 2023. Those professional engagements, opportunities, relationships, and contracts include, but are not limited to the following organizations/music venues/locations: RTVE Madrid, Lhati Symphony Atlanta, Sao Paulo Symphony, Malaysian Philharmonic, Milwaukee Symphony, Los Angeles Chamber Philharmonic, Singapore Symphony, Dessau Symphony, Detroit Symphony, RTE Dublin, Queensland Symphony, Liverpool Symphony, Dallas Symphony, NZSO, Tampere Philharmonic, Bremen Philharmonic, Iceland Symphony, Helsingborg Symphony, Wroclaw Philharmonic, Cyprus Symphony Orchestra, RTE NSOI, Fort Worth Symphony, Kansas City Symphony, Nashville Symphony, Seattle Symphony, Baltimore Symphony, Colburn School, Atlanta Symphony, National Arts Centre Orchestra, Ottawa Canada, Interlochen School, Colorado Symphony, Rochester Philharmonic, Yale School of Music, Poland Symphony, Ulster Philharmonic, and others.

128.    Kalmar has lost and continues to incur substantial lost income and earning capacity, all of which is directly attributable to the discriminatory and illegitimate purported Title IX investigation undertaken by Defendant CIM and the media coverage and circumstances caused by Defendants Scott, Harrison, Southern, and CIM's discriminatory, illegal, negligent, and outrageous disclosures and defamatory statements described above.

129.    The emotional and physical impact resulting from the above-described conduct and the consequences thereof on Maestro Kalmar and his wife, Raffaela Kalmar, has been profound.

130.    Kalmar has incurred and continues to incur severe emotional pain and suffering as a direct and proximate result of Defendants' conduct and the consequences thereof.

131.    But for the discriminatory and illegitimate purported Title IX investigation and Defendants Scott, Harrison, Southern, and CIM's discriminatory violations of Title IX and Maestro Kalmar's rights guaranteed under Title IX, and CIM's policies, and the negligent and outrageous misconduct that accompanied the disclosures and defamatory statements set forth above herein, the CIM student body and faculty at large would never have known about any potential confidential Title IX investigation or alleged Title IX violations involving Maestro Kalmar, none of which were substantiated.

132.    But for CIM's discriminatory and illegitimate purported Title IX investigation and Defendants Scott, Harrison, Southern, and CIM's discriminatory violations of Title IX and Maestro Kalmar's rights guaranteed under Title IX, and CIM's policies, and the negligent and outrageous misconduct that accompanied the disclosures and defamatory statements set forth above, Maestro Kalmar's identity would never have been made known publicly and Maestro Kalmar would never have been publicly linked with any Title IX investigation or any allegations of dangerous and inappropriate sexual behavior and sexual discrimination against young women, for which Maestro Kalmar was eventually exonerated.

133.    But for CIM's discriminatory and illegitimate purported Title IX investigation and Defendants Scott, Harrison, Southern, and CIM's discriminatory violations of Title IX and Maestro Kalmar's rights guaranteed under Title IX, and CIM's policies, and the negligent and outrageous misconduct that accompanied the disclosures and defamatory statements set forth above, Maestro Kalmar would not have been the subject of numerous media stories and social media posts associating him with allegations that he engaged in sexually inappropriate behavior and sexually harasses and discriminates against young women.

134.    But for CIM's discriminatory and illegitimate purported Title IX investigation and Defendants Scott, Harrison, Southern, and CIM's violations of Title IX and Maestro Kalmar's rights guaranteed under Title IX, and CIM's policies, and the negligent and outrageous misconduct that accompanied the disclosures and defamatory statements set forth above, Maestro Kalmar's reputation in his field, which has been forever destroyed, would have remained intact.

135.    But for CIM's discriminatory and illegitimate purported Title IX investigation and Defendants Scott, Harrison, Southern, and CIM's violations of Title IX and Maestro Kalmar's rights guaranteed under Title IX, and CIM's policies, and the negligent and outrageous misconduct that accompanied the disclosures and defamatory statements set forth above, Maestro Kalmar would not have incurred and would not continue to incur lost income and earning capacity and would not have incurred and would not continue to incur extreme emotional pain and suffering.

### FIRST CLAIM FOR RELIEF
### (20 U.S.C. § 1681, et seq. Against Defendant CIM – Title IX)

136.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

137.    Maestro Kalmar is a "person" under 20 U.S.C. § 1681(a), *et seq.*

138.    At all times relevant, Maestro Kalmar was an employee of and at Defendant CIM.

139.    At all times relevant Defendant CIM received federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. 1681(a), *et seq*. as a "Recipient."

140.    Maestro Kalmar was entitled to certain rights and protections under Title IX while employed at CIM, including, but not limited to, the right to be free from being discriminated against or treated differently based on his gender and to a fair and impartial investigation process undertaken by unbiased investigators and school administrators/employees.

141.    As described and set forth above, Maestro Kalmar was excluded from participating in the educational programs at CIM and was subjected to discrimination by Defendant CIM on the basis of his sex/gender as a man.

142.    Defendant CIM, by and through its employees, officers, and agents, discriminated against Kalmar and treated him differently than other similarly situated female employees and students at CIM in connection with the purported Title IX investigation Defendant CIM undertook, including in the following non-exhaustive ways:

a.  Evaluating, considering, and claiming that alleged conduct was or could be sex discrimination or sexual harassment as defined by CIM and prohibited by Title IX under circumstances where the same or similar conduct is not and has never been evaluated, considered, or alleged by CIM to be sex discrimination or sexual harassment;

b.  Taking jurisdiction of and undertaking to investigate alleged conduct that is not and could not be sex discrimination or sexual harassment as defined by CIM and prohibited by Title IX under circumstances where the same or similar conduct is not and has never been evaluated, considered, or alleged by CIM to be sex discrimination or sexual harassment;

c.  Repeatedly publicly disclosing Maestro Kalmar's identity as the target of a purported Title IX investigation in violation of his confidentiality rights under Title IX and CIM policies, while not disclosing and the identities and protecting the same rights of female employees and students entitled to the same confidentiality rights as Kalmar;

d.  Failing to follow CIM procedures and requirements for conducting Title IX investigations in connection with the investigation into Kalmar, but following said policies and requirements in connection with investigations into similarly situated female employees and students;

e.  Publicly defaming, making false statements and inferences/innuendo, and disclosing private information about Maestro Kalmar in connection with CIM's purported Title IX investigation while not making any such statements and not disclosing any private information about any of the female students and employees involved in the same (or any other) investigation at CIM;

f.  Repeatedly publicly soliciting participation in and soliciting the disclosure of damning information against Kalmar from the CIM student body and faculty in connection with CIM's purported Title IX investigation, but not seeking such

participation or information as against any female employees or students involved in the same (or any other) investigation;

g.  Initiating a Title IX investigation against Maestro Kalmar under circumstances where similarly situated female employees or students at CIM were not and have never been subjected to any such investigation;

h.  Upon information and belief, Defendant CIM has never initiated a Title IX investigation against any female employee or student. Rather, Defendant CIM has only ever pursued Title IX investigations against men, including Kalmar.

i.  Treating benign and routine conduct, when undertaken by a man, including the conduct and alleged conduct at issue by Kalmar, as constituting sex discrimination or sex harassment or sexual misconduct, but not when undertaken by similarly situated female employees and students at CIM;

j.  Not abiding by CIM policies and procedures in connection with Title IX investigations and proceedings, including the investigation/proceedings at issue, when the target of the investigation is a man as compared to a woman;

k.  Selectively enforcing CIM policies and procedures and Title IX requirements and regulations in a manner that discriminates against men over women, including Maestro Kalmar in connection with the circumstances at issue over similarly situated female employees and students at CIM;

l.  Not affording or even trying to afford supportive measures as required under Title IX and CIM policies to male respondents, including Kalmar under the circumstances at issue, while affording supportive measures to similarly situated female employees and students at CIM; and

m.  Not providing administrative support to Kalmar under the terms of his contract and as required under Title IX and CIM policies prior to, during, and following the Title IX investigation at issue, but providing said support to similarly situated female employees and students in the same investigation (and others).

143.    Defendant CIM subjected Kalmar to unfair procedures that were biased against men, as set forth above herein and as will be more fully demonstrated following discovery, in connection with CIM's sex discrimination and sexual harassment policies and Title IX procedures and customs/practices.

144.    While CIM authored no written findings or determinations following the Title IX and provided no such written findings or determinations to Kalmar or anyone else, all in violation

of Title IX and CIM's policies, the "outcome" of CIM's purported Title IX investigation was erroneous in that CIM, through it's actions, ultimately conveyed to the student body and faculty, and public, that Kalmar had engaged in sexual misconduct and was guilty of Title IX violations.

145.    The results and information conveyed during CIM's purported Title IX investigation were erroneous and inaccurate.

146.    The flawed outcome and inaccurate information conveyed and resulting from CIM's Title IX investigation/proceedings/process was the result of gender bias against Kalmar. But for said bias and discrimination, no Title IX investigation would have ever ensued and/or the process would have been undertaken much differently, in compliance with Title IX and CIM policies and procedures.

147.    The flawed outcome and inaccurate information conveyed publicly during and in connection with CIM's purported Title IX investigation proximately caused: substantial negative media coverage associating Kalmar with allegations of sexual misconduct involving young women; the CIM student body and faculty to believe that Kalmar was engaging in sexual misconduct against female students and to protest him; and ultimately caused irreparable harm to his reputation, lost work, and his forced involuntary leave from CIM and his inability to participate in his field as a musician in any way.

148.    As a result of the conduct by CIM as set forth above herein, Maestro Kalmar was subjected to a hostile environment in violation of Title IX.

149.    Kalmar's experience at CIM was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently pervasive so as to alter the conditions of his environment as an employee and in connection with his role and duties at CIM.

150.     Defendant CIM was deliberately indifferent to the known acts of discrimination, harassment, and conduct targeting Maestro Kalmar as set forth and described herein, including specifically, discriminatory conduct by Defendants Scott, Southern, and Harrison, and conduct by CIM faculty and the CIM student body.

151.     The acts of discrimination, harassment, and conduct targeting Kalmar, as set forth herein, was so severe, pervasive, and objectively offensive that it effectively and literally barred Kalmar's access to the opportunities associated with his employment, positions, and role at CIM.

152.     Defendant CIM selectively enforced and/or chose to violate and not enforce Title IX requirements and its policies, as set forth and described herein, against Kalmar on the basis of his sex/gender.

153.     Defendant CIM treated similarly situated female employees and students within the same Title IX investigation, as well as other investigations, more favorable than Kalmar because of sex.

154.     Defendant CIM selectively investigated and treated conduct undertaken by Kalmar as constituting sex discrimination or sexual harassment while treating similarly situated female employees and students more favorably who engaged in the same or similar alleged conduct.

155.     34 C.F.R. § 106.71, and CIM's policies, prohibit intimidating or discriminating against any individual, including Kalmar, for the purpose of interfering with any right or privilege secured by Title IX or 34 C.F.R. § 106.71.

156.     Per 34 C.F.R. § 106.71, intimidating or discriminating against any individual, including Kalmar, for the purpose of interfering with any right or privilege secured by Title IX or 34 C.F.R. § 106.71 constitutes "retaliation" which is "prohibited."

157.    Defendant CIM intimidated and discriminated against Maestro Kalmar for the purpose of interfering with his rights and privileges secured by Title IX and 34 C.F.R. § 106.71, including, but not limited to his right to remain confidential/confidentiality/privacy, his right to be deemed not responsible for the alleged violations/misconduct, his right to a fair and unbiased investigation, his right to a written determination of responsibility, and other rights.

158.    By definition under 34 C.F.R. § 106.71 and CIM's policies, Defendant CIM retaliated against Kalmar.

159.    34 C.F.R. § 106.71 and CIM's policies retaliation against any person for participating or refusing to participate in any Title IX investigation.

160.    34 C.F.R. § 106.71 further states that a recipient of federal financial assistance, such as CIM, must "keep confidential the identity of… any individual who has been reported to be the perpetrator of sex discrimination [and] any respondent…"

161.    According to Defendants, Maestro Kalmar was purportedly a "perpetrator of sex discrimination" and a "respondent" in relation to claimed Title IX complaints regarding his conduct.

162.    Maestro Kalmar engaged in protected activity when he participated in and cooperated with CIM's investigation that followed the purported complaints regarding his behavior. Furthermore, Maestro Kalmar engaged in protected activity when he opposed and defended himself against the false allegations that he had engaged in any sex discrimination.

163.    Maestro Kalmar's status as a respondent and/or alleged perpetrator of sex discrimination in connection with any Title IX proceedings or communications at CIM affords Kalmar protections under Title IX, including 34 C.F.R. § 106.71.

164.    Defendants knew that Maestro Kalmar had engaged in the aforementioned protected activity and/or otherwise was entitled to protections under Title IX given his status.

165.    As a direct and proximate result of Maestro Kalmar's engagement in protected activity and/or protected status, Defendants violated Title IX and retaliated against him and subjected him to materially adverse actions, which include, but are not limited to, the following:

a.    On multiple occasions, publicly disclosing Maestro Kalmar's identity as a "perpetrator of sex discrimination" and a respondent in relation to alleged Title IX complaints in violation of 34 C.F.R. § 106.71;

b.    Placing Maestro Kalmar on an involuntary leave of absence;

c.    Prohibiting Maestro Kalmar from performing his job duties;

d.    Subjecting Maestro Carlos Kalmar to untenable working conditions whereby CIM supported misinformed and misled students in their crusade against Maestro Kalmar, including by not enforcing CIM rules against the students;

e.    Refusing to provide Maestro Kalmar with the administrative support necessary to perform his job duties; and

f.    Constructively terminating his employment.

166.    Defendants violated Maestro Kalmar's rights under and otherwise violated Title IX requirements that entitled Maestro Kalmar to a fair and impartial Title IX investigation process by unbiased investigators and School administrators.

167.    Defendant CIM's conduct and retaliation, by and through its employees, officers, and agents constituted materially adverse actions against Kalmar that directly and effectively terminated him, ruined his reputation on campus and beyond, stripped him of the support of CIM faculty, students, and administrators, prohibited him from coming on campus, stripped him of his duties and responsibilities, and prohibited him from engaging in his profession both on and off campus.

168.    As a direct and proximate result of Defendant CIM's conduct as alleged in this Claim for Relief, Kalmar has suffered and will continue to suffer damages, including, but not limited to, loss of employment, loss of earnings, and loss of earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendant CIM for:

a.  Compensatory damages in an amount that will fully and fairly compensate Kalmar for his economic harms and losses in an amount exceeding $5,000,000;

b.  Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

c.  All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

## SECOND CLAIM FOR RELIEF
### (Negligence Against Defendants CIM, Scott, Harrison, and Southern)

169.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

170.    At all times relevant, Defendants owed Maestro Kalmar a duty to act reasonably and within their professional standards of care under the circumstances to avoid causing foreseeable injury(ies) to Maestro Kalmar.

171.    Under the circumstances at issue, reasonably prudent individuals in the position of Defendants would have anticipated and/or should have known that the injuries about which Kalmar complains herein were likely to result from the conduct alleged herein.

172.    At all times relevant it was and/or should have been foreseeable to Defendants that their conduct alleged herein in connection with CIM's purported Title IX investigation/proceedings/process, and their conduct thereafter, would result in Kalmar suffering reputational harm, severe emotional distress, lost professional engagements, opportunities, and earnings and earning capacity.

173.     Indeed, at all times relevant, Defendants reasonably knew or should have known and/or were on notice that initiating, publicizing, and defaming Maestro Kalmar in connection with Title IX proceedings involving sexual misconduct against young female students, as alleged herein, would be highly likely to cause severe reputational and emotional and financial harm to Kalmar.

174.     Defendants had a duty under Title IX and its regulations and CIM's policies to conduct non-discriminatory, unbiased, and fair Title IX investigations and to keep his identity confidential in connection with any investigations/proceedings.

175.     The well-accepted standard of care in CIM's industry, as reflected in CIM's own policies and standards, prohibits discriminatory, biased, and unfair sexual misconduct/Title IX investigations and prohibits the disclosure of a respondent's identity.

176.     Defendants breached their duties by engaging in the conduct alleged herein.

177.     The individual Defendants named in this Claim For Relief, were, at all times relevant, acting within the course, scope, and authority their employment/agency with Defendant CIM, and for the benefit of and with the intention and purpose to benefit CIM.

178.     Defendant CIM authorized and ratified the conduct of its employees, officers, and agents identified in this Claim for Relief.

179.     Defendants' breaches of their duties and the applicable standard of care in their industry/field, as described herein, was willful, wanton, and done with conscious disregard for Maestro Kalmar's rights, entitling him to the recovery of punitive damages.

180.     Defendants' breaches, as described herein, proximately caused Maestro Kalmar to suffer economic and noneconomic damages, injuries, and loss, both past and future.

181.     As a direct and proximate result of Defendants' conduct alleged herein, Kalmar he has suffered and will continue to suffer general and special damages, including, but not limited to, severe emotional distress, loss of earnings, and loss of earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants CIM, Scott, Harrison, and Southern, jointly and severally, for:

   a.  Compensatory damages in an amount that will fully and fairly compensate Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

   b.  Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

   c.  Punitive damages against Defendants CIM, Scott, Harrison, and Southern, in an amount that will serve to adequately punish and deter the acts and omissions of these Defendants alleged herein; and

   d.  All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

### THIRD CLAIM FOR RELIEF
**(Negligent Hiring, Training, Supervision, and Retention Against Defendants CIM, Harrison, Southern, and Hogle)**

182.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

183.     Defendants CIM, Harrison, Southern, and Hogle owed a duty of reasonable care in hiring, training, supervising, and retaining CIM's employees, including Defendant Vivian Scott.

184.     At all times relevant, Defendant Scott was not and never had been certified as a Title IX Investigator.

185.     At all times relevant, Defendant Scott had never conducted a Title IX investigation.

186.     At the time she was hired and retained, Defendant Scott had never served as and had no experience as a Title IX coordinator or compliance officer.

187.    Defendants identified in this Claim for Relief provided no, or inadequate, training to Defendant Scott on how to comply with Title IX and CIM's relevant policies, or how to conduct a Title IX investigation.

188.    Defendants CIM, Harrison, Southern, and Hogle breached their duty and violated their duties and the standard(s) of care in the industry by, among other things:

      a.  Hiring Defendant Scott when CIM and these Defendants knew or should have known that Defendant Scott was incompetent to serve as CIM's Title IX Coordinator and to lead Title IX investigations in accordance with federal laws and regulations, prevailing professional industry standards, and CIM internal policies and procedures;

      b.  Failing to use reasonable care in training Defendant Scott to serve as CIM's Title IX Coordinator and to lead Title IX investigations in accordance with federal laws and regulations, prevailing professional industry standards, and CIM internal policies and procedures;

      c.  Failing to use reasonable care in supervising Defendant Scott during her service as CIM's Title IX Coordinator to ensure that she led Title IX investigations in accordance with federal laws and regulations, prevailing professional industry standards, and CIM internal policies and procedures;

      d.  Retaining Defendant Scott as CIM's Title IX Coordinator despite the fact that she was incompetent, lacked appropriate training, and was unable to lead Title IX investigations in accordance with federal laws and regulations, prevailing professional industry standards, and CIM internal policies and procedures;

      e.  Ratifying and condoning Defendant Scott's conduct, as alleged herein, and not intervening to correct or otherwise disciplining or correcting Defendant Scott's conduct.

189.    Through their hiring, training, supervision, and retention of Defendant Scott, Defendants CIM, Harrison, Southern, and/or Hogle acted recklessly and with a conscious disregard to their obligations and Kalmar's rights and well-being.

190.    The individual Defendants named in this Claim For Relief, were, at all times relevant, acting within the course, scope, and authority their employment/agency with Defendant CIM, and for the benefit of and with the intention and purpose to benefit CIM.

191.    These Defendants' negligence, recklessness, and conscious disregard of their various obligations to Maestro Kalmar in hiring, retaining, and failing to train and supervise Defendant Scott regarding her position as Title IX Coordinator and Title IX investigator was a direct and proximate cause of Maestro Kalmar's injuries, harms, and damages described in this Complaint.

192.    As a direct and proximate result of these Defendants' negligence, recklessness, and conscious disregard, Maestro Kalmar has suffered and will continue to suffer general and special damages, including, but not limited to, severe emotional distress, loss of earnings, and loss of earning capacity, all of which were foreseeable.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants CIM, Harrison, Southern, and Hogle, jointly and severally, for:

a.    Compensatory damages in an amount that will fully and fairly compensate Plaintiff Carlos Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

b.    Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment;

c.    Punitive damages against Defendants CIM, Harrison, Southern, and Hogle, in an amount that will serve to adequately punish and deter the acts and omissions of these Defendants alleged herein; and

d.    All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

### FOURTH CLAIM FOR RELIEF
**(Breach of Contract and Breach of Implied Contract/Promissory Estoppel Against Defendant CIM)**

193.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

194.    On April 13, 2021, Defendant CIM and Maestro Kalmar entered into an Employment Agreement, whereby CIM employed Maestro Kalmar as its Director of Orchestral and Conducting Programs. *See* Exhibit 1.

195.    The term of the Employment Contract is July 1, 2021 to June 30, 2027.

196.    Maestro Kalmar performed and stood ready to perform all his obligations under the Employment Contract.

197.    CIM's anti-discrimination, sex discrimination, sexual harassment, and Title-IX related policies and procedure constitute a contractual agreement between Kalmar and Defendant CIM. Said Policies are attached hereto as Exhibit 2.

198.    Defendant CIM's conduct, as alleged herein, including its violations of its policies, constitutes a breach of the contract with Kalmar.

199.    At all times relevant, Kalmar followed, abided by, and stood ready to abide by and perform under CIM's policies and procedures at issue.

200.    Alternatively, Defendant CIM promised and represented to Kalmar that it would follow its policies and procedures as a condition of his employment.

201.    Kalmar relied upon Defendant CIM's promises and representations in this regard, ultimately to his detriment, and Defendant CIM knew or should have known that Kalmar so relied.

202.    Furthermore, Defendant CIM breached the written Employment Contract with Kalmar by engaging in the conduct alleged herein.

203.    Specifically, but not exclusively, CIM breached the Employment Agreement when it refused to provide Maestro Kalmar with the administrative support required to perform his duties, prevented him from performing as CIM's Principal Conductor, relieved him of his duties (and rights) under the Employment Contract, placed him on an involuntary leave of absence,

interfered with his designated roles at CIM, prohibited him from engaging in the professional activities authorized and afforded him under the Employment Contract, supported students and faculty members in protesting Kalmar under false pretenses and facts, suspended and did not enforce the Student Code of Conduct as against students to the detriment of Kalmar, and expressly prohibited Kalmar from performing his job duties, in violation of the following sections of the Employment Contract:

     a.  4.a.i. through 4.a.viii.

     b.  4.b.i. through 4.b.v.

     c.  4.c.i. through 4.c.vi.

     d.  4.d.i.-4.d.ii, and 4.d.v.

     e.  5.c.

     f.  5.g.

     g.  5.h. and

     h.  8.b.

204.    CIM's performance under the Employment Contract was not excused.

205.    As a direct and proximate result of CIM's breaches and conduct set forth in this Claim for Relief, Maestro Kalmar suffered and will continue to suffer general and special damages, including, but not limited to, loss of earnings and loss of earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendant CIM for:

     a.  Compensatory damages in an amount that will fully and fairly compensate Kalmar for the harms and losses he suffered, in an amount exceeding $5,000,000;

     b.  Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

c.  All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

## FIFTH CLAIM FOR RELIEF
### (Tortious Breach of Contract Against Defendants CIM, Harrison, Southern, and Hogle)

206.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

207.  Defendants CIM, Harrison, Southern, and Hogle breached the Employment Contract and CIM policies as set forth above.

208.  These breaches were of such a type that serious emotional disturbance was foreseeable and a particularly likely result.

209.  Indeed, following CIM's discriminatory investigation and unlawful and false disclosure that Maestro Kalmar was under investigation for sexual misconduct, had engaged in sexual misconduct, inappropriate and illegal sexual behavior, and made CIM unsafe, the student body, quite predictably, reacted and protested Maestro Kalmar. With knowledge of this reaction, and even though further and more intense reactions were likely to follow, CIM continued to disclose that Maestro Kalmar was under investigation for sexual misconduct, never corrected any of the false and defamatory statements previously made, or the false impressions and implications of Defendant Scott's previous disclosure, and never issued any written clarifications or findings/determinations associated with the alleged misconduct at issue.

210.  Defendants CIM, Harrison, Southern, and Hogle breached the Employment Contract and CIM policies in numerous ways, all as set forth above, in a manner that was substantially certain to, and did, proximately cause severe emotional distress to Maestro Kalmar, which continues to this day and will continue into the future.

211.    Furthermore, the breaches of the Employment Contract and CIM policies were done willfully, wantonly, and with a conscious disregard for Maestro Kalmar's rights under the Employment Contract, federal law, prevailing professional industry standards, and CIM's internal policies and procedures.

212.    As a result, the Defendants named in this Claim For Relief are liable for emotional distress and punitive damages, as well as Maestro Kalmar's lost earnings and earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants CIM, Harrison, Southern, and Hogle, jointly and severally, for:

    a. Compensatory damages in an amount that will fully and fairly compensate Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

    b. Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment;

    c. Punitive damages against these Defendants, in an amount that will serve to adequately punish and deter the acts and omissions of these Defendants alleged herein; and

    d. All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

<u>**SIXTH CLAIM FOR RELIEF**</u>
**(Invasion of Privacy – False Light and Disclosure of Private Facts/Information Against All Defendants)**

213.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

214.    Defendants Scott and Harrison published and publicized and/or adopted and ratified statements and inferences/innuendo to the CIM community and the public at large that Maestro Kalmar was a perpetrator of sexual misconduct, a respondent in a purported Title IX investigation, and associated with a Title IX investigation into sexual misconduct, all in direct violation of Title

IX, federal rules and regulations, Kalmar's recognized privacy interests, prevailing professional industry standards, and CIM's policies and procedures.

215.    The public disclosures made and/or adopted and ratified by Defendants Scott and Harrison placed Maestro Kalmar in a false light and/or otherwise disclosed private facts and information by:

     a.  Stating that Maestro Kalmar was the target of a Title IX investigation;

     b.  Stating and inferring that Maestro Kalmar had engaged in inappropriate and illegal behavior that violated Title IX, a law prohibiting sex-based discrimination and harassment;

     c.  Stating and inferring that Maestro Kalmar had engaged in "horr[ific]" sexual misconduct and inappropriate and illegal sexual behavior;

     d.  Stating and inferring that Maestro Kalmar had violated Title IX;

     e.  Stating and inferring that Maestro Kalmar had engaged in conduct that "clearly violated" Title IX;

     f.  Stating and inferring that CIM was not a safe place with Maestro Kalmar there;

     g.  Stating and inferring that Maestro Kalmar's inappropriate and illegal sexual behavior needed to be addressed;

     h.  Stating and inferring that Maestro Kalmar had a history of engaging in improper and illegal sexual misconduct;

     i.  Stating and inferring CIM's Title IX Coordinator and Compliance Officer was initiating a Title IX investigation into Maestro Kalmar;

     j.  Stating and inferring that CIM's Title IX Coordinator and Compliance Officer was conducting a Title IX investigation into Maestro Kalmar;

     k.  Stating and inferring that CIM's Title IX Coordinator and Compliance Officer was filing a formal Title IX complaint against Maestro Kalmar;

     l.  Stating and inferring that CIM's Title IX Coordinator and Compliance Officer was filing a Title IX complaint against Maestro Kalmar so no student had to;

     m.  Stating and inferring that the professors at CIM "had the students' back[s]" concerning Maestro Kalmar's sexual misconduct;

      n.   Encouraging students that "strength in numbers" was required to unite against Maestro Kalmar and his claimed dangerous sexual behavior;

      o.   Stating and inferring that students needed to respond to Defendant Scott's email and unite to get rid of Maestro Kalmar to make the school a safe place again; and

      p.   Soliciting students to come forward with any potentially damning information or accusations against Maestro Kalmar to assist in the investigation, to accomplish the objective of getting rid of Maestro Kalmar due to his sexual misconduct.

216.    These public disclosures, which were widely disseminated, published, and publicized, were serious and highly offensive and placed Maestro Kalmar in a false light.

217.    Defendants Scott and Harrison gave publicity to the matters set forth above and placed Maestro Kalmar before the public with knowledge and/or with reckless disregard as to the falsity of matters disclosed and the false light in which such disclosures would place Kalmar.

218.    Defendants CIM, Harrison, Southern, and Hogle ratified and condoned these public disclosures made by Defendant Scott by failing to correct the disclosures; repeating the disclosures; and amplifying the disclosures via subsequent public disclosures made by CIM's Executive Vice President and Provost, Harrison, and CIM's Vice President of Academic Affairs, Dean of the Institute, and "Acting" Title IX Coordinator, Southern.

219.    To the extent any of the disclosures were true, Defendants Scott and Harrison unreasonably publicized Maestro Kalmar's private affairs, in connection with which he had a recognized and recognizable privacy interest, with which the public had no legitimate concern, all of which amounted to unreasonable publicity being given to and an unreasonable intrusion into the private facts about and affairs of Kalmar.

220.    Defendants CIM, Harrison, Southern, and Hogle also ratified and condoned these public disclosures made by Defendant Scott by failing to terminate or reprimand Defendant Scott.

221.    The Defendants acted with knowledge of and/or in reckless disregard as to the false light in which they placed Maestro Kalmar.

222.    No privilege applied to Defendants' communications that portrayed Maestro Kalmar in a false light.

223.    Defendants' disclosures and invasion alleged herein were outrageous and likely to and did cause mental suffering, shame, and humiliation to Kalmar, as they would to any reasonable person of ordinary sensibilities.

224.    The individual Defendants named in this Claim For Relief, were, at all times relevant, acting within the course, scope, and authority their employment/agency with Defendant CIM, and for the benefit of and with the intention and purpose to benefit CIM.

225.    As a direct and proximate result of the false light in which the Defendants placed Maestro Kalmar, and/or the disclosure of private facts and his private affairs, Kalmar has suffered, and will continue to suffer, extreme mental and emotional pain and suffering, harm to reputation, loss of earnings, and loss of earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants, jointly and severally, for:

      a.   Compensatory damages in an amount that will fully and fairly compensate Maestro Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

      b.   Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment;

      c.   Punitive damages against the Defendants, in an amount that will serve to adequately punish and deter the acts and omissions of the Defendants alleged herein; and

      d.   All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

## SEVENTH CLAIM FOR RELIEF
### (Defamation Against All Defendants)

226.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

227.    Defendant Scott published, disseminated, and publicized to the CIM community and the public at large statements and inferences/innuendo, as set forth herein, including but not limited to, that Maestro Kalmar was a perpetrator of sexual misconduct involving young female students and was a respondent in a purported Title IX investigation, in direct violation of Title IX, federal rules and regulations, prevailing professional industry standards, and CIM's internal policies and procedures.

228.    Defendant's Scotts published statements and inferences/innuendo, as set forth herein, characterized Kalmar as a perpetrator of sexual misconduct and dangerous individual.

229.    The statements made by Defendant Scott were untrue and verifiably false statements of fact, not opinion.

230.    The statements and inferences made by Defendant Scott were defamatory in that they:

a.    Stated that Maestro Kalmar was the target of a Title IX investigation;

b.    Stated and inferred that Maestro Kalmar had engaged in inappropriate and illegal behavior that violated Title IX, a law prohibiting sex-based discrimination and harassment;

c.    Stated and inferred that Maestro Kalmar had engaged in "horr[ific]" sexual misconduct and inappropriate and illegal sexual behavior;

d.    Stated and inferred that Maestro Kalmar had violated Title IX;

e.    Stated and inferred that Maestro Kalmar had engaged in conduct that "clearly violated" Title IX;

f.    Stated and inferred that CIM was not a safe place with Maestro Kalmar there;

g.  Stated and inferred that Maestro Kalmar's inappropriate and illegal sexual behavior needed to be addressed;

h.  Stated and inferred that Maestro Kalmar had a history of engaging in improper and illegal sexual misconduct;

i.  Stated and inferred CIM's Title IX Coordinator and Compliance Officer was initiating a Title IX investigation into Maestro Kalmar;

j.  Stated and inferred that CIM's Title IX Coordinator and Compliance Officer was conducting a Title IX investigation into Maestro Kalmar;

k.  Stated and inferred that CIM's Title IX Coordinator and Compliance Officer was filing a formal Title IX complaint against Maestro Kalmar;

l.  Stated and inferred that CIM's Title IX Coordinator and Compliance Officer was filing a Title IX complaint against Maestro Kalmar so no student had to;

m.  Stated and inferred that the professors at CIM "had the students' back[s]" concerning Maestro Kalmar's sexual misconduct;

n.  Stated that "strength in numbers" was required to unite against Maestro Kalmar and his claimed dangerous sexual behavior;

o.  Stated and inferred that students needed to respond to Defendant Scott's email and unite to get rid of Maestro Kalmar to make the school a safe place again; and

p.  Stated and inferred that students should come forward with any potentially damning information or accusations against Maestro Kalmar to assist in the investigation, to accomplish the objective of getting rid of Maestro Kalmar due to his sexual misconduct.

231.    A reasonable person reading Defendant Scott's email would understand it to mean that Kalmar had engaged in multiple acts of "horr[ific]" sexual misconduct, harassment, and discrimination against young female students; that the faculty at CIM agreed with her characterization of Maestro Kalmar's conduct; that there were many victims of Kalmar's sexual misconduct, harassment, and discrimination; and that Kalmar made "CIM a[n] [un]safe place" because he was dangerous.

232.    The statements and inferences made by Defendant Scott were defamatory *per se*, or, in the alternative, defamatory *per quod*.

233.    The statements and inferences made by Defendant Scott were defamatory under the totality of the circumstances due to: 1) the content of her public disclosure; 2) the specific words she used; 3) the clear inferences raised in the email; and 4) the general and broad context in which she made her public disclosure.

234.    The statements and inferences made by Defendant Scott were false, highly offensive, and caused irreparable harm to Maestro Kalmar's reputation by stating and inferring that he was a perpetrator of widespread sexual misconduct, harassment, and discrimination and by disclosing that he was purportedly under investigation for such misconduct.

235.    Defendant Scott's statements and inferences/innuendo were such that they would tend to and did cause injury to Kalmar's reputation, exposed him to public hatred, contempt, ridicule, shame, disgrace, and affected his professional opportunities/business.

236.    Defendants CIM, Harrison, Southern, and Hogle ratified and condoned the statements and inferences/innuendo made by Defendant Scott by failing to correct the statements and inferences; repeating the statements and inferences; and amplifying the statements and inferences via subsequent public statements made by CIM's Executive Vice President and Provost, Defendant Harrison, and CIM's Vice President of Academic Affairs, Dean of the Institute, and "Acting" Title IX Coordinator, Defendant Southern.

237.    Defendants CIM, Harrison, Southern, and Hogle also ratified and condoned these public statements and inferences made by Defendant Scott by failing to terminate or reprimand Defendant Scott.

238.   The Defendants acted with malice and with knowledge of and/or in reckless disregard as to the falsity of the aforementioned statements and inferences made about Maestro Kalmar.

239.   No privilege applied to Defendants' defamatory communications regarding Maestro Kalmar.

240.   The individual Defendants named in this Claim For Relief, were, at all times relevant, acting within the course, scope, and authority their employment/agency with Defendant CIM, and for the benefit of and with the intention and purpose to benefit CIM.

241.   As a direct and proximate result of the defamatory statements made by Defendants, Maestro Kalmar has suffered, and will continue to suffer, extreme mental and emotional pain and suffering, harm to reputation, loss of earnings, and loss of earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants, jointly and severally, for:

    a.   Compensatory damages in an amount that will fully and fairly compensate Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

    b.   Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment;

    c.   Punitive damages against the Defendants, in an amount that will serve to adequately punish and deter the acts and omissions of the Defendants alleged herein; and

    d.   All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

<u>**EIGHTH CLAIM FOR RELIEF**</u>
**(Tortious Interference with Business Relationships Against All Defendants)**

242.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

243.     As a renowned conductor and orchestral instructor, Maestro Kalmar maintained contractual and business/professional relationships and had known recurring and proven professional opportunities with numerous institutions around the world, for whom he would serve as a guest conductor or instructor.

244.     Defendants knew that Maestro Kalmar maintained these contractual and business/professional relationships and opportunities; they helped to facilitate Defendant CIM's decision to seek to hire Kalmar, and CIM's knowledge in this regard evidenced by the recitations made in the Employment Contract. *See* Exhibit 1.

245.     By engaging in the conduct alleged herein, and causing the publicity and reputational harm at issue, Defendants prevented the formation of contracts upon which Maestro Kalmar would serve as a guest conductor or instructor for various institutions and caused the termination of and interference with Kalmar's business/professional relationships and opportunities with various institutions for whom he would have served as a guest conductor or instructor or otherwise obtained employment and furthered his career.

246.     During and following Defendants' conduct as referenced in this Complaint, and the associated publicity and media coverage, Maestro Kalmar has incurred multiple cancellations of booked engagements, non-renewals of recurring engagements/opportunities, and has experienced an inability to book new professional engagements like he could prior to Defendants' conduct at issue. These lost professional engagements and opportunities include, specifically, but are not limited to the contracts, professional relationships and opportunities set forth in Paragraph 127.

247.     The Defendants acted with malice and with knowledge of and/or in reckless disregard of Kalmar's professional life, opportunities, and ability to earn a living for himself and his family.

248.     During and following the Title IX investigation, Defendants acted maliciously and with reckless disregard to Maestro Kalmar's business/professional contracts and opportunities.

249.     The individual Defendants named in this Claim For Relief, were, at all times relevant, acting within the course, scope, and authority their employment/agency with Defendant CIM, and for the benefit of and with the intention and purpose to benefit CIM.

250.      As a direct and proximate result of Defendants conduct as alleged herein, Maestro Kalmar has incurred, and will continue to incur, severe mental and emotional distress, loss of earnings, and loss of earning capacity.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants, jointly and severally, for:

    a.  Compensatory damages in an amount that will fully and fairly compensate Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

    b.  Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment;

    c.  Punitive damages against the Defendants, in an amount that will serve to adequately punish and deter the acts and omissions of the Defendants alleged herein; and

    d.  All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

## <u>NINTH CLAIM FOR RELIEF</u>
### (Intentional Infliction of Emotional Distress Against All Defendants)

251.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

252.     In making her public disclosures regarding Maestro Kalmar, Defendant Scott intended to cause Maestro Kalmar serious emotional distress.

253.    Defendant Scott knew or should have known that her public disclosure regarding Maestro Kalmar would result in serious emotional distress and mental anguish to Kalmar.

254.    Defendant Scott's public disclosure regarding Maestro Kalmar was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

255.    As a direct and proximate result of Defendant Scott's public disclosure regarding Maestro Kalmar, he has suffered and will continue to suffer extreme mental anguish and emotional distress.

256.    Defendants CIM, Harrison, Southern, and Hogle ratified and condoned Defendant Scott's extreme and outrageous conduct via subsequent public statements made by CIM's Executive Vice President and Provost, Defendant Harrison, and CIM's Vice President of Academic Affairs, Dean of the Institute, and "Acting" Title IX Coordinator, Defendant Southern.

257.    Defendants CIM, Harrison, Southern, and Hogle also ratified and condoned Defendant Scott's extreme and outrageous conduct by failing to terminate or reprimand Defendant Scott.

258.    The individual Defendants named in this Claim For Relief, were, at all times relevant, acting within the course, scope, and authority their employment/agency with Defendant CIM, and for the benefit of and with the intention and purpose to benefit CIM.

259.    The continuing mental anguish and emotional distress suffered by Maestro Kalmar is so serious in nature that no reasonable person should be expected to endure it.

**WHEREFORE**, Plaintiff Carlos Kalmar demands judgment against Defendants, jointly and severally, for:

a. Compensatory damages in an amount that will fully and fairly compensate Kalmar for the harms and losses he suffered, in an amount exceeding $25,000,000;

b. Costs of suit and reasonable attorneys' fees and interest, both pre-judgment and post-judgment;

c. Punitive damages against the Defendants, in an amount that will serve to adequately punish and deter the acts and omissions of the Defendants alleged herein; and

d. All such other relief to which Maestro Kalmar is entitled and/or the Court deems equitable.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury is demanded on all the issues presented herein.

Dated this 10th day of May 2024.           Respectfully submitted,

*/s/ Nicholas A. DiCello*
Nicholas A. DiCello (Ohio Bar No. 0075745)
Dennis R. Lansdowne (Ohio Bar No. 0026036)
Michael P. Lewis (Ohio Bar No. 0099621)
Spangenberg Shibley & Liber LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: 216-696-3232 | Fax: 216-696-3924
*ndicello@spanglaw.com*
*dlansdowne@spanglaw.com*
*mlewis@spanglaw.com*

James R. Wooley (Ohio Bar No. 0033850)
Hilow & Spellacy Co., LLC
323 W. Lakeside Ave., # 200
Cleveland, OH 44113
Telephone: 216-344-9220
*jwooley@mghslaw.com*

***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of May 2024, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

<u>/s/ Nicholas A. DiCello</u>
Nicholas A. DiCello (0075745)
Dennis R. Lansdowne (0026036)
Michael P. Lewis (0099621)

***Counsel for Plaintiff***